IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WMH TOOL GROUP, INC., ) | |
| ) | |
| Plaintiff/Counter-Defendant, ) | |
| ) | Civil Action No. 07-cv-3885 |
| v. ) | |
| ) | Hon. Judge John W. Darrah |
| WOODSTOCK INTERNATIONAL, ) | |
| INC., and GRIZZLY INDUSTRIAL, ) | Magistrate Judge Mason |
| INC., ) | |
| ) | |
| Defendants/Counter-Plaintiffs. ) | |

**DEFENDANT GRIZZLY INDUSTRIAL, INC.'S MEMORANDUM IN
OPPOSITION TO PLAINTIFF'S MOTION TO QUASH
DEPOSITION NOTICE AND SUBPOENA FOR EDWARD CLAIR,
OR ALTERNATIVELY, FOR A PROTECTIVE ORDER**

Defendants served a Notice of Deposition (**Ex. 1**) for one of plaintiff's attorneys, Edward Clair. Defendants also served a subpoena (**Ex. 2**) on Mr. Clair which included document requests (**Ex. 2**, Schedule A). The document requests are limited to all documents which relate or refer to the prosecution of the underlying U.S. trademark application, Serial No. 78/222,453, for U.S. Registration No. 2,893,180 (the '180 Reg), which is for the trademark "white." The alleged "white" trademark and the '180 Reg are the basis for all of plaintiff's claims.

Plaintiff has moved to quash the notice and subpoena on the ground that Ed Clair is plaintiff's trial counsel and that the information may be available from other unnamed persons or, in the alternative, limiting the scope of Mr. Clair's deposition to non-privileged and non-attorney work product information and documents related to the '180 Reg.

Plaintiff's motion should be denied for the following reasons:

1

1. The USPTO initially refused registration of plaintiff's "white" mark on the grounds that plaintiff's mark is merely ornamental and functional, and Mr. Clair prepared, signed and filed the Response to the Office Action on which the USPTO relied in withdrawing the refusal to register. Only Mr. Clair can testify as to why he included the evidence and arguments that he did and why he omitted certain evidence.

2. The Response was filed by Mr. Clair on March 1, 2004, long before this case was filed, and relies on the Declaration of Scott M. Box, plaintiff's Vice President of Marketing and Product Management in March 2004. Mr. Box testified that Mr. Clair drafted the Declaration for Mr. Box and that Mr. Box does not recall making any changes to his Declaration. (**Ex. 7**, Box Dep. pp. 75, 94) Only Mr. Clair can testify as to the reasons for the information that was included in the Box Declaration and what information was excluded from the Box Declaration, and why.

3. Mr. Clair's Response also relies on Exhibits A-E to the Response which are not even mentioned in Mr. Box's Declaration. Thus, Mr. Clair's mental impressions of what was argued and what was not argued, what information and documents were disclosed and not disclosed to the USPTO can be obtained only from Mr. Clair.

4. Only Mr. Clair can testify as to the due diligence that he exercised or failed to exercise regarding (a) his search for documents required by the USPTO Office Action, (b) the information and documents Mr. Clair requested and obtained from the plaintiff to meet the USPTO requirements, and (c) what relevant information and documents he had that were not included in the Response to the Office Action.

5. In view of Judge Darrah's preliminary finding that defendants demonstrated a likelihood of success on the merits on their claim that plaintiff's '180 Reg is subject to

cancellation for fraud, defendants would be extremely prejudiced if not allowed to depose Mr. Clair and to examine all information and documents for evidence of fraud, including information and documents identified as privileged and/or work product.

6. Mr. Clair will be an indispensable fact witness at trial regarding defendants' fraud claims. By prosecuting the application, Mr. Clair put himself in a position to be a fact witness.

7. Limiting the deposition to non-privileged and non-work product information and documents, as plaintiff suggests, will do nothing to shed any light on Judge Darrah's preliminary fraud findings because this information is already available in the USPTO file history and was already presented to Judge Darrah. The facts here warrant going behind the USPTO file history. Otherwise, any information sought from Mr. Clair would be objected to on the grounds of privilege and/or work product.

8. Mr. Clair should not be allowed to prosecute the '180 Reg, use it as a sword in this litigation, and then be allowed to use his role as trial counsel as a shield from this deposition and from disclosing facts and documents which are relevant to the alleged fraud. Moreover, the fact that Mr. Clair prosecuted the '180 Reg, especially in view of Judge Darrah's preliminary fraud findings, may preclude Mr. Clair from acting as trial counsel in view of the potential conflict because he will also be a fact witness at trial. Mr. Clair's deposition, without privilege and work product limitations, is essential for gathering facts regarding the fraud claims and to determine if Mr. Clair should be excluded from acting as trial counsel. The facts relevant to this issue can be obtained only from Mr. Clair, not from other witnesses as plaintiff suggests.

## BACKGROUND

Plaintiff filed this action on July 10, 2007, alleging, *inter alia*, that the colors of defendants' woodworking and metal working machines infringed plaintiff's U.S. Reg. No. 2,893,180 ("the '180 Reg") for a trademark described as the color "white".

In answering plaintiff's complaint, defendants asserted that plaintiff committed fraud on the USPTO by falsely representing material facts to the USPTO, namely, that: (1) the alleged mark shown in the '180 Reg was used on all of the goods listed in the identification of goods when it was not (Defendants' First Affirmative Defense), (2) the alleged mark was first used on woodworking machines in 1996 when it was not used for such goods until 1998 (Defendants' Second Affirmative Defense), and (3) plaintiff's alleged mark had become distinctive by reason of substantially exclusive and continuous use by plaintiff when WMH knew, or should have known, that its' use was not exclusive (Defendants' Third Affirmative Defense). Following an evidentiary hearing on defendants' motion for a preliminary injunction, Judge Darrah found, in an Order dated February 14, 2008, that "... WMH failed to fully address the PTO Office Action by failing to disclose other manufacturers' previous use of white on their machines in the same or similar industry", and concluded that "Defendants have sufficiently demonstrated a likelihood of success on the merits of its claim that the '180 Reg is subject to cancellation for fraud on the PTO in the procurement of registration." (**Ex. 3,** p. 9) Only Mr. Clair can shed further light on these issues.

## THE PROSECUTION OF THE '180 REG

The underlying application for the '180 Reg, Serial No. 78/222,453, was filed on March 6, 2003. During the prosecution of the '180 Reg, in an Office Action dated August 28, 2003 (**Ex.**

4

4), the Trademark Examiner initially refused registration on the ground that the color white is functional noting

> In this case, the color WHITE is a very basic color in the industry for such goods. It appears that others also use white for similar goods. See attached. Therefore, the color WHITE for the goods is functional in that it is more economical to use and would place others at a competitive disadvantage. (**Ex. 4, p.2**)

If applicant responded to the refusal to register, the Examiner required that

> The applicant must also indicate whether competitors produce the same or similar goods in the identified color and in colors other than the identified color. (**Ex. 4, p.3**)

Plaintiff's Response (**Ex. 5, p.4**), prepared and filed by Mr. Clair, did not address this requirement to identify third party white machines. To get around it, plaintiff verified and argued that

> For decades prior to the Applicant's adoption for the color WHITE for its woodworking and metalworking machines, manufacturers of such equipment typically provided the goods in a limited range of shades of either gray, green or blue. The Applicant previously used such industry standard colors for its goods. Over approximately the last ten years, other manufacturers of woodworking and metalworking equipment have adopted differentiating distinct colors for their respective equipment. (**Ex. 6**, Box Decl. ¶ 9)

To the contrary, in his deposition taken in this case on November 7, 2007, Mr. Box testified that he had been aware of third party uses of white on woodworking and metalworking machines since the mid 1980s (**Ex. 7**, Box Dep, pp. 85-86, 100).

Plaintiff's own witnesses and current employees admitted at the preliminary injunction hearing that they were aware of third party uses of white machines since prior to 1996, plaintiff's alleged date of first use of its alleged mark. For example, plaintiff's vice president of sales, George Blanchfield, admitted that he was aware of other companies in the metalworking field that have white metalworking machines, that some of the machines are the same type as

5

plaintiff's JET machines, and that the other white machines have been in the market since prior to 1996 (**Ex. 8**, T118-119).

The description of goods in plaintiff's '180 Reg does not contain any restrictions or limitations on the channels of trade or any particular market (i.e., industrial versus hobbyist). Therefore, the '180 Reg is interpreted to include all channels of trade for woodworking and metalworking goods. Thus, there are no limits on relevant channels of trade for purposes of analyzing this validity issue, and all third party uses of "white" woodworking and metal working machinery should have been submitted with the Response to Office Action..

One example of Mr. Clair's fraud, raised in defendants' preliminary injunction briefs, is illustrated in plaintiff's Response to the Office Action where plaintiff relied on a few pages from the October 2003 issue of "Popular Woodworking" magazine for the purpose of showing the "red" goods of a third party and that "red" was registered. However, plaintiff omitted the numerous third-party uses of "white" wood working machinery *appearing in the same publication* (including defendants' products at issue here).

The response prepared and filed by Mr. Clair failed to inform the USPTO of the many third party uses of "white" on woodworking and metal working machinery from the mid-1980s to date. Only Mr. Clair can explain why he failed to address this USPTO requirement, and what information he possessed and failed to disclose in addition to the failure to disclose other uses of third party "white" machinery in the October 2003 issue of "Popular Woodworking" referenced above.

## RELEVANT LEGAL AUTHORITIES

In *qad.inc. v. ALN Associates, Inc.*, the court rejected plaintiff's motion for a protective order to preclude the taking of lead counsel's testimony because it would be "inappropriate to

address with a blanket protective order the wholly speculative problems that might be (but are unlikely to be) posed by the [lead counsel's] deposition." 132 F.R.D. 498, 495 (N.D. Ill. 1990).

In *aaiPharma v. Kremers Urban Development Co.*, the court denied the plaintiff's motion to quash defendant's subpoena requiring patentee's trial counsel to provide deposition testimony relating to the firm's involvement in the prosecution of the underlying patent before the USPTO. 361 F.Supp.2d 770, 775 (N.D. Ill. 2005). The court explained "it would be unfair to accused patent infringers if patentees could shield potentially harmful discovery related to their knowledge of prior art merely by using their prosecution counsel, or patentability opinion counsel, as trial counsel." *Id.* at 775.

In *Environ Products v. Total Containment*, the court held a party was entitled to depose the opposing party's trial counsel, who had previously participated in the reexamination of the patent, because the attorney's impressions made during patent reexamination were directly applicable to the affirmative defense of inequitable conduct and could only be discovered by opposing counsel. 1996 WL 494132, 4 (E.D. P. 1996). The court held that the attorney's mental impressions during reexamination could be discovered "when directly relevant to the litigation and when the need for production is compelling." *Id.* Further, the court stressed that "compelling need" exists "whenever information is within the exclusive control of the party from which discovery is sought." *Id.*

In *Pamida, Inc. v. E.S. Originals, Inc.*, the court held that because the attorney's knowledge of a prior completed case was "crucial" to the instant case, the opposing party was not precluded from deposing counsel on information in the prior completed case. 281 F.3d 726, 731. The court stated that "*Shelton* was not intended to provide a heightened protection to attorneys who represented a client in a completed case and then also happened to represent that same client

address with a blanket protective order the wholly speculative problems that might be (but are unlikely to be) posed by the [lead counsel's] deposition." 132 F.R.D. 498, 495 (N.D. Ill. 1990).

In *aaiPharma v. Kremers Urban Development Co.*, the court denied the plaintiff's motion to quash defendant's subpoena requiring patentee's trial counsel to provide deposition testimony relating to the firm's involvement in the prosecution of the underlying patent before the USPTO. 361 F.Supp.2d 770, 775 (N.D. Ill. 2005). The court explained "it would be unfair to accused patent infringers if patentees could shield potentially harmful discovery related to their knowledge of prior art merely by using their prosecution counsel, or patentability opinion counsel, as trial counsel." *Id.* at 775.

In *Environ Products v. Total Containment*, the court held a party was entitled to depose the opposing party's trial counsel, who had previously participated in the reexamination of the patent, because the attorney's impressions made during patent reexamination were directly applicable to the affirmative defense of inequitable conduct and could only be discovered by opposing counsel. 1996 WL 494132, 4 (E.D. P. 1996). The court held that the attorney's mental impressions during reexamination could be discovered "when directly relevant to the litigation and when the need for production is compelling." *Id.* Further, the court stressed that "compelling need" exists "whenever information is within the exclusive control of the party from which discovery is sought." *Id.*

In *Pamida, Inc. v. E.S. Originals, Inc.*, the court held that because the attorney's knowledge of a prior completed case was "crucial" to the instant case, the opposing party was not precluded from deposing counsel on information in the prior completed case. 281 F.3d 726, 731. The court stated that "*Shelton* was not intended to provide a heightened protection to attorneys who represented a client in a completed case and then also happened to represent that same client

in a pending case where the information known only by the attorney regarding the prior concluded case was crucial." *Id.* at 730. *Shelton* applies only to depositions of trial counsel regarding their knowledge about the particular case in which they served as trial counsel. *Id.*

Plaintiff's rely heavily on *Shelton v. American Motors Corp.*, but *Shelton* does not control in the Seventh Circuit as noted by more than one judge in this District. As Judge St. Eve noted in *aaiPharma v. Kremers Urban Development Co.*, 361 F. Supp. 2d at 774-75 that:

> the Seventh Circuit has not addressed the issue of whether the *Shelton* rule applies in this circuit. Some courts in this circuit have declined to follow *Shelton*. *See Cook Inc. v. C.R. Bard Inc.*, 2003 U.S. Dist. LEXIS 20779, No. IP 00-1791, 2003 WL 23009047 (S.D. Ind. Sept. 18, 2003) (affirming the Magistrate Judge's order allowing a deposition of trial counsel to go forward, and decline to follow *Shelton*.) Judge Shadur has also rejected the reasoning of *Shelton* and allowed a party to depose opposing trial counsel. *See Qad, Inc. v. ALN Assoc., Inc.*, 132 F.R.D. 492 (N.D. Ill. 1990).

> As the court in the *Cook* case also recognized, the Court notes that the Eighth Circuit has limited *Shelton* to the depositions of trial counsel regarding their knowledge about the particular case in which they served as trial counsel. *Pamida, Inc. v. E.S. Originals, Inc.*, 281 F.3d 726, 730 (8th Cir. 2002) (holding that the *Shelton* rule does not apply to depositions of attorneys about matters separate from the matter in which the attorney is serving as trial counsel); *Cook*, 2003 U.S. Dist. LEXIS 20779, 2003 WL 23009047, *1 n.11. This reasoning is particularly compelling here, where Defendants seek discovery from MBHB about MBHB's representation of AAI regarding the prosecution of the patents in suit, and not about the underlying litigation. Indeed, it would be unfair to accused patent infringers if patentees could shield potentially harmful discovery related to their knowledge of prior art merely by using their prosecution counsel, or patentability opinion counsel, as trial counsel. Accordingly, the Court declines to require that Defendants meet the heavy burden of *Shelton* in order to obtain discovery from MBHB.

Further support for defendants' position is found in *Susan Srail, et al. v. Village of Lisle*, 2007 U.S. Dist. LEXIS 92363. Judge Kennelly noted that:

> The *Shelton* analysis does not apply when the topics of deposition involve counsel's knowledge of a prior underlying matter that is relevant to the current litigation. *See Pamida v. E.S. Originals, Inc.*, 281 F.3d 726, 730 (8th Cir. 2002) ("*Shelton* was not intended to provide heightened protection to attorneys who represented a client in a completed case and then also happened to represent that

8

same client in a pending case where the information known only by the attorneys regarding the prior concluded case was crucial.").

*Id.* at *6-7.

The *Miyano* case relied on by plaintiff is not consistent with the weight of authority in this district and circuit. Furthermore, the *Miyano* case is distinguishable from the present case because here there is evidence of fraud. Moreover, the documents sought are public records, i.e., evidence of third party uses of "white" wood working and metal working machinery that may be in Mr. Clair's file. Finally, the attorney-client privilege should be pierced because defendants have established a prima facie case of fraud. A prima facie showing of fraud requires (1) a knowing, willful, and intentional act of misrepresentation or omission before the USPTO (Mr. Clair failed to provide third party uses of "white" machinery); (2) that is material (the USPTO Office Action required this information); and (3) the USPTO relied upon the misrepresentation and omission (because it withdrew the refusal to register and granted a registration for the color "white" for woodworking and metal working machinery). *Stryker Corp. v. Intermedics Orthopedis, Inc.* 148 F.R.D. 493, 497 (E.D. N.Y. 1993).

The court already found that fraud is likely. The information that Mr. Clair holds may potentially be the crux of defendants' fraud claims. Mr. Clair's knowledge is crucial to the instant case because he is the only person that knows why he included certain information and not other information in response to the rejections contained in the Office Actions. The information held by Mr. Clair should not receive heightened protection because he represented the plaintiff in the prosecution of the trademark and now in the pending action. Therefore, he should not be permitted to shield relevant discovery related to his knowledge of the fraud committed during the procurement of the '180 Reg.

## **CONCLUSION**

For the foregoing reasons, plaintiff's motion should be denied.

Dated: December 5, 2008

Respectfully submitted,

    /s/    Joseph F. Schmidt
Joseph F. Schmidt (Illinois Bar No. 2492180)
Michele S. Katz (Illinois Bar No. 6273985)
**HUSCH BLACKWELL SANDERS**
  **WELSH & KATZ**
120 S. Riverside Plaza, 22nd Floor
Chicago, IL 60606
Tel:   (312) 655-1500
Fax:  (312) 655-1501
E-mail: Joseph.Schmidt@huschblackwell.com
E-mail: Michele.Katz@huschblackwell.com
Attorneys for Woodstock and Grizzly

## CERTIFICATE OF SERVICE

I herby certify that a true and correct copy of the foregoing DEFENDANT GRIZZLY INDUSTRIAL, INC.'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO QUASH NOTICE OF DEPOSITION AND SUBPOENA FOR EDWARD CLAIR OR, ALTERNATIVELY, FOR A PROTECTIVE ORDER was electronically filed on December 5, 2008, with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

>Edward E. Clair, Esq.
>Steven C. Schroer, Esq.
>Shane Delsman, Esq.
>Christine Abuel Pompa, Esq.
>Fitch, Even, Tabin & Flannery
>120 South LaSalle Street, Suite 1600
>Chicago, Illinois 60603-3406
>*Attorneys for Plaintiff/Counter-Defendant*

>/s/ Joseph F. Schmidt
>One of the Attorneys for Defendants/Counter-Plaintiffs