UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| WMH TOOL GROUP, INC., | ) | |
| | ) | |
| Plaintiff/Counter-Defendant, | ) | Case No. 07 CV 3885 |
| | ) | |
| v. | ) | |
| | ) | Judge John W. Darrah |
| WOODSTOCK INTERNATIONAL, INC.; | ) | |
| and GRIZZLY INDUSTRIAL, INC., | ) | |
| | ) | |
| Defendants/Counter-Plaintiffs. | ) | |

## MEMORANDUM OPINION AND ORDER

WMH Tool Group, Inc. ("WMH" or "Plaintiff") brings this action against Defendants, Woodstock International, Inc. ("Woodstock") and Grizzly Industrial, Inc. ("Grizzly"),[1] alleging nine causes of action. Presently before the Court is Grizzly's Motion for Summary Judgment. (Docket No. 170). For the reasons stated below, the motion is granted in part and denied in part.

## LEGAL STANDARD

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the initial burden to show that the evidence is insufficient to establish a material element of the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). If the moving party meets this burden, the non-moving party cannot rest on conclusory pleadings but must "set forth

---

[1] Woodstock and Grizzly, collectively, are referred to as "Defendants."

1

specific facts in affidavits or otherwise to show that there is a genuine issue of material fact that must be decided at trial." *Colan v. Cutler-Hammer, Inc.*, 812 F.2d 357, 361 (7th Cir. 1987). If the evidence supporting the non-moving party's claim is insufficient for a reasonable jury to return a verdict in its favor, the court will grant summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In determining whether a genuine issue of material fact exists, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in the non-moving party's favor. *Gillis v. Litscher*, 468 F.3d 488, 492 (7th Cir. 2006).

## BACKGROUND

The following background facts are derived from the parties' filings of record, including their filings pursuant to Local Rule 56.1.[2] WMH is a corporation organized under the laws of the State of Washington with its corporate headquarters located in Elgin, Illinois. (Pltf. Resp. to Grizzly SMF, ¶ 1.) Grizzly is a corporation organized under the laws of the State of Washington with its principal place of business in Bellingham, Washington. (Pltf. Resp. to Grizzly SMF, ¶ 2.) Woodstock is also a Washington corporation, having the same prinicipal place of business as Grizzly, in Bellingham, Washington. (Defendants' Answer, ¶ 2.)

---

[2]Local Rule 56.1(a)(3) requires the moving party to provide "a statement of material facts as to which the party contends there is no genuine issue for trial." *Ammons v. Aramark Uniform Servs., Inc.*, 368 F.3d 809, 817 (7th Cir. 2004). Local Rule 56.1(b)(3) requires the non-moving party to admit or deny every factual statement proffered by the moving party and to concisely designate any material facts that establish a genuine dispute for trial. *See Schrott v. Bristol-Myers Squibb Co.*, 403 F.3d 940, 944 (7th Cir. 2005). A litigant's failure to respond to a Rule 56.1 statement results in the court's admitting the uncontroverted statement as true. *Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006).

WMH sells woodworking and metalworking machinery. (Pltf. Resp. to Grizzly SMF, ¶ 10.) Grizzly and Woodstock also sell woodworking and metalworking machinery. (Grizzly Resp. to WMH SMF, ¶ 7.) Woodstock allegedly began selling its machinery under the brand name Shop Fox in 2001. (Grizzly Res. to WMH SMF, ¶ 7.) Woodstock and Grizzly are in direct competition with WMH in the woodworking and metalworking machinery market.

Grizzly and Woodstock share certain office resources, such as a network and servers on the internet. (Grizzly Resp. to WMH SMF, ¶ 18.) Grizzly's Chinese and Taiwanese offices also do work on behalf of Woodstock. (Grizzly Resp. to WMH SMF, ¶ 18.) At times, instructions to foreign vendors or offices of the two entities may be combined. Shiraz Balolia is the President and Founder of both Grizzly and Shop Fox; Don Osterloh is the Vice President of Grizzly and General Manager of Woodstock. (Grizzly Res. to WMH SMF, ¶ 17.)

In 1996, WMII debuted its JET brand of metalworking machines in a new white color. In 1998, JET launched its woodworking machines in this white color. (Grizzly Res. to WMH SMF, ¶ 2.) On March 26, 2003, WMH applied to place its JET white trademark on the Patent and Trademark Office's Principal Register. On October 12, 2004, WMH received a trademark, U.S. Reg. No. 2,893,180, for "the color white as applied to exterior surfaces" of woodworking and metalworking machines (the '180 Trademark Registration). (Grizzly Res. to WMH SMF, ¶ 4; Pltf. Resp. to Grizzly SMF, ¶ 9).

Since 1996, WMH has promoted its products with the trademark white trade dress. WMH's sales of products with the white trade dress have exceeded hundreds of millions of dollars. WMH has spent millions of dollars advertising its products with the trademark white trade dress. Since 1996, WMH has distributed millions of catalogs and brochures for its products with the white trade dress and has extensively advertised its products on its internet web site and in periodicals. (WMH Resp. to Grizzly SMF, ¶¶ 29-32.)

On July10, 2007, WMH filed this lawsuit against Woodstock and Grizzly, alleging that Woodstock (under the Shop Fox brand name) and Grizzly (under the Grizzly or Grizzly Industrial brand names) have and continue to import, promote, advertise, offer for sale and sell in interstate commerce woodworking and metalworking machinery that incorporate and infringe WMH's registered "white" trade dress. WMH alleges Defendants' infringement is causing and is likely in the future to cause confusion, deception, and mistake concerning (1) the source and origin of the Shop Fox and Grizzly/Grizzly International brand products; (2) the affiliation, connection or association between WMH and Woodstock and Grizzly; (3) and WMII's sponsorship and approval of the Shop Fox and Grizzly/Grizzly International brand products. WMH's complaint alleges nine causes of action against both Defendants: trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1114 (first cause of action); false advertising, false designation of origin and unfair competition in violation of 15 U.S.C. § 1125(a) (second cause of action); trademark dilution in violation 15 U.S.C. § 1125(c) (third cause of action); use in commerce and/or sale, offering for sale, distribution, and advertising of

counterfeit goods under 15 U.S.C. §§ 1114, 1116, 1117, 1118 and 1127 (fourth cause of action); importing merchandise bearing a counterfeit mark in violation of the Tariff Act, 19 U.S.C. § 1526(e) (fifth cause of action); infringement and unfair competition under Illinois common law (sixth cause of action); infringement and unfair competition under the Illinois Deceptive Trade Practices Act, 815 ILCS 510/1 (seventh cause of action); infringement and unfair competition under the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 (eighth cause of action); and infringement and unfair competition under the Illinois Trademark Registration and Protection Act, 765 ILCS 1036/60 *et seq.* (ninth cause of action).

Defendants deny WMH's claims and have asserted counterclaims, seeking, among other things, an order cancelling the '180 Trademark Registration on the basis of fraud on the United States Patent and Trademark Office.

Prior to the filing of this lawsuit, WMH recorded the '180 Trademark Registration with Customs and Border Protection ("CBP") and sought an order from CBP denying entry to certain of Woodstock's and Grizzly's machinery manufactured overseas. In July 2007, a few days after this lawsuit was filed, CBP seized some of Defendants' machinery at a trade show in Las Vegas. Defendants sought and received a temporary restraining order, restraining and enjoining CBP from seizing Defendants' products at the trade show. On October 26, 2007, Defendants then filed a motion for a preliminary injunction with the Court, seeking an order requiring WMH to consent to the release of Defendants' products seized and detained by CBP.

A hearing on this motion for a preliminary injunction was held on January 17, 2008. During the hearing, the parties agreed that their dispute concerned only Defendants' machines "bearing the white trade dress," and WMH stated that it had no objection to an order, directing CBP to release Grizzly's "green and tan" machines. (Tr. at 30.) Subsequently, on January 17, 2008, an order was entered by the Court ("January 17, 2008 Order"), ordering WMH to consent to the release by CBP of all presently or future seized green and tan machines of Grizzly.

Subsequently, on February 14, 2008, this Court entered an order, granting Defendants' motion for a preliminary injunction as to Woodstock's remaining white/off-white products. (Docket No. 109.) The Court ordered that WMH consent to CBP's immediate release of all presently or future seized "white/off-white machines and equipment" of Woodstock. The Court found the preliminary injunction was warranted because Defendants sufficiently demonstrated a likelihood of success on the merits of their claim that the '180 Trademark Registration was subject to cancellation for fraud on the Patent and Trademark Office. In addition, the Court found the balance of hardships and public policy weighed in favor of the injunction. The Court stated the alleged infringing products had been sold in the alleged infringing color since 2001, but WMH did not demonstrate any actual confusion or lost sales; Defendants demonstrated that orders for their goods were being negatively affected; and Grizzly's green and tan machines "were being wrongfully seized and detained based on the same alleged infringement."

## ANALYSIS

Grizzly now moves "for summary judgment on the nine causes of action in [P]laintiff's complaint in so far as these causes of action relate to defendant Grizzly, and Grizzly's green and tan machinery." (Grizzly Mot. at 1.)

Grizzly first contends it is entitled to summary judgment because WMH admitted, on three different occasions during the preliminary injunction proceedings, that Grizzly's green and tan colors do not infringe WMH's asserted rights for the color white as applied to exterior surfaces of woodworking and metalworking machinery. Specifically, Grizzly contends WMH admitted Grizzly's green and tan machines do not infringe when WMH agreed to the January 17, 2008 Order and when WMH's counsel asked the following question of Grizzly's Vice President, Don Osterloh, during the preliminary injunction hearing:

> Q: Okay. Now, there's an easy answer here, isn't there? Change the color to something that doesn't infringe, your tan color, for example.

(Tr. 32.)

In addition, Grizzly contends WHM admitted Grizzly's green and tan machines do not infringe its white trade dress by making the following statement as to irreparable harm in its brief in opposition to Defendants' Motion for a Preliminary Injunction:

> Given Defendants' existing non-infringing colors (Grizzly Green and Grizzly Green and tan), they can hardly claim irreparable harm because they simply disregarded the warning issued by Customs.

(Docket No. 70, p. 13.)

Grizzly argues this described conduct during the preliminary injunction proceedings constitutes binding admissions by WMH that Grizzly's green and tan machines are non-infringing. It asserts these admissions "remove from contention the issue of likelihood of confusion" in all of WMH's claims. In further support of its position, Grizzly submits a photograph, purporting to show a panel from one of its machines and a panel from one of WMH's machines. (Grizzly Ex. 5.) Grizzly contends this photograph shows that its machine is not the white color of WMH's machine but, rather, is tan in color.

WMH, in its opposition brief, asserts that statements made by WMH's counsel during the preliminary injunction hearing are irrelevant because, even if Grizzly sold and advertised machines that were actually green or green/tan, Grizzly also sells and advertises infringing white machines. WMH asserts:

> Grizzly may sell some green and *tan* machinery, like the color scheme shown on Defendants['] Exhibit 5, but the fact that some Grizzly sales may be lawful does not end the case. The actual dispute is simple – Grizzly sells green and _white_ machinery, Grizzly advertises green and _white_ machinery, and Grizzly sells and advertises _white_ Shop Fox machinery under Grizzly product numbers. The alleged fact that [Grizzly] also sells tan . . . products does not legally excuse Grizzly's infringing white sales.

(WMH Opp. at 9.) In support of this position, WMH submits excerpts from Grizzly's 2008 catalog, Grizzly's website, and Grizzly's advertising in various magazines. (Delsman Dec., Exs. 13-15.) These exhibits appear to depict machines advertised and sold by Grizzly that are not tan in appearance.

WMH's evidence is sufficient to create triable issues as to whether Grizzly sells and advertises green and white machines. Even though WMH may have acknowledged

8

at the preliminary injunction hearing that Grizzly sold green and tan machines and that such green and tan machines do not infringe the '180 Trademark Registration (and WMH consented to the Court's entry of the January 17, 2008 Order, releasing such machines from seizure), this does not show that WMH admitted that all of Grizzly's accused machines here are green and tan and does not show that no genuine issue of material fact exists as to all of the accused Grizzly machinery.³ Grizzly contends it seeks summary judgment only as to its green and tan machines, but a dispute exists as to whether Grizzly also advertises and sells green and white machinery and which of Grizzly's machines are actually green and tan. Therefore, summary judgment is not warranted on the basis of WMH's prior acknowledgement in the preliminary injunction hearing that seized Grizzly's machines are green and tan and do not infringe the '180 Trademark Registration.

Grizzly's second asserted basis for summary judgment is that all of the nine causes of action alleged in WMH's Complaint depend on a factual finding of likelihood of confusion, and no reasonable trier of fact could find that Grizzly's green and tan colors are likely to cause confusion with WMH's alleged white trademark and trade dress.

"The linchpin of both common law and federal statutory trademark infringment claims is whether consumers in the relevant market confuse the alleged infringer's mark with the complainant's mark." *AHP Subsidiary Holding Co. v. Stuart Hale Co.*, 1 F.3d 611, 615 (7th Cir. 1993) (*AHP*). Likelihood of confusion in trademark infringement

---

³The referenced statements made at the preliminary injunction hearing were made in the limited context of a preliminary injunction hearing as to a specific group of seized machines and do not necessarily pertain to all Grizzly machines accused in this lawsuit.

claims is evaluated by analysis of the following seven factors: (1) similarity between the marks in appearance and suggestion; (2) similarity of the products; (3) area and manner of concurrent use; (4) degree of care likely to be exercised by consumers; (5) strength of the complainant's mark; (6) actual confusion; and (7) intent of defendant to palm-off his products as that of another. *AHP*, 1 F.3d at 615; *Packman v. Chicago Tribune Co.*, 267 F.3d 628, 643 (7th Cir. 2001). "No single factor is dispositive, and courts may assign varying weights to each of the factors depending on the facts presented, although, in many cases, the similarity of the marks, the defendant's intent, and actual confusion are particularly important." *Packman*, 267 F.3d at 643. Although likelihood of confusion is a question of fact, the issue may be resolved on summary judgment where the evidence is so one-sided that there can be no doubt about how the question should be answered." *Packman*, 267 F.3d at 643 (internal citation omitted). However, the Seventh Circuit has cautioned that "a motion for summary judgment in trademark infringement cases must be approached with great caution," and summary judgment is not appropriate where the plaintiff has shown that differences between the parties as to any likelihood of confusion factors creates a genuine material issue of triable fact. *AHP*, 1 F.3d at 616.

Grizzly argues that no genuine material issue of fact exists as to likelihood of confusion because: (i) the parties have been using the marks at issue concurrently for a long period of time, and Plaintiff has not presented any evidence of actual confusion; (ii) Plaintiff's counsel's statements at the preliminary injunction hearing and in its opposition to Defendants' motion for a preliminary injunction that Grizzly's green and tan colors are non-infringing is persuasive evidence there is no likelihood of confusion;

10

(iii) the fact that WMH and Grizzly both prominently display their respective trade names on their machinery, catalogs, advertising and promotional materials "eliminates any likelihood of confusion as to source"; (iv) the use of different colors by Grizzly and the fact that Grizzly prominently displays its trade name on its machinery are persuasive evidence that Grizzly lacks intent to infringe and is not attempting to pass off its machinery as that of WMH; and (v) it is "inconceivable that anyone would even think that Grizzly's green and tan machines are [WMH's]" because Grizzly's green and tan colors are noticeably different in appearance from WMH's white color. Based on these arguments, Grizzly contends it is entitled to summary judgment as to its green and tan machinery on Counts I, II, IV, V and WMH's state-law claims. Grizzly also argues it is entitled to summary judgment on Count III (for trademark dilution) because this claim requires proof of actual injury to the economic value of the mark and WMH has not presented any evidence of actual injury to the economic value.

WMH disputes Grizzly's assertions as to likelihood of confusion. It points to evidence sufficient, at this point in discovery, to raise a genuine dispute as to likelihood of confusion. Among other things, WMH points to evidence tending to show that Grizzly sells and advertises green and white machinery and advertises and sells white machinery under the Shop Fox brand name; WMH and Grizzly are direct competitors whose products contain identical functional features and similar prices; WMH and Grizzly are in the same channels of trade and advertise in the same media; and the founder of both Grizzly and Woodstock had knowledge of WMH's white trade dress. In addition, WMH submits evidence of at least one customer who called Grizzly about a

11

machine purchased from WMH. Viewing the evidence, at this juncture, in the light most favorable to WMH, WMH's evidence is sufficient to survive summary judgment.

However, in its opposition brief, WMH does not contest that summary judgment should be entered on its claim for trademark dilution alleged in Count III. WMH does not contest Grizzly's assertion that the claim requires evidence of actual injury to the economic value of the mark and does not present such evidence. Accordingly, Grizzly's motion for summary judgment is granted as to Count III.

## CONCLUSION

For the reasons stated above, Grizzly's motion for summary judgment is granted as to Count III but is otherwise denied.

Date: 4-8-09

JOHN W. DARRAH
United States District Court Judge