**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| WMH Tool Group, Inc., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 07-CV-3885 |
| | ) | |
| v. | ) | Hon. Judge John W. Darrah |
| | ) | |
| Woodstock International, Inc., and | ) | Mag. Judge Michael T. Mason |
| Grizzly Industrial, Inc. | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

MICHAEL T. MASON, United States Magistrate Judge.

Plaintiff WMH Tool Group, Inc. ("WMH" or "plaintiff") filed this action against

defendants Woodstock International, Inc. and Grizzly Industrial, Inc. ("defendants") to

protect its alleged trade dress and common law rights in the color white as used on

woodworking and metalworking machines. The trademark registration at issue is

referred to as the "'180 Reg." Defendants deny plaintiff's claims of infringement and

assert various counterclaims, including that the '180 Reg is invalid and unenforceable

because WMH presented materially false and misleading information to the United

States Patent and Trademark Office (the "PTO").

Presently before this Court is defendants' renewed request to depose Edward

Clair ("Mr. Clair"), one of plaintiff's attorneys in this case, and to preclude WMH from

relying on a claim of privilege as a basis for withholding testimony.[1] Defendants also

seek to compel certain documents that WMH contends are protected by the attorney-

---

[1]It appears that defendants' request that we preclude plaintiff from relying on a claim of
privilege is not confined to the proposed deposition of Mr. Clair.

client privilege. Defendants argue that these documents are relevant to WMH's acquisition of the '180 Reg and defendants' fraud counterclaim.

## I.     BACKGROUND

### A. Relevant Facts

Plaintiff filed the underlying application for the '180 Reg on March 6, 2003. The PTO initially refused registration through an Office Action dated August 28, 2003 (the "Office Action"). As explained by the trademark examiner, "the proposed mark appears to be functional" in that it "comprises the color white which serves a utilitarian purpose," and therefore is not registrable. The examiner characterized the color white as "a very basic color in the industry for such goods," and noted that it "appears that others also use white for similar goods." The examiner requested that WMH submit: (1) additional information indicating if the identified color, white, serves any purpose as used on the goods; (2) available advertising, promotional or explanatory literature concerning the goods; and (3) a concise description of the mark clearly indicating that the mark consists of a single color. He also requested that WMH " indicate whether competitors produce the same or similar goods in the identified color, and in colors other than the identified color" and "provide color photographs and color advertisements showing competitive goods."

WMH filed its Response to Office Action (the "Response") on March 1, 2004. Mr. Clair, who represented WMH in its efforts to register the '180 Reg, executed the Response. The Response amends the initial application for the '180 Reg and provides additional information regarding the mark. Along with the Response, WMH filed the Declaration of Scott Box (the "Box Declaration"), copies of advertisements from Popular

Woodworking Magazine, copies of WMH's color advertisements and color advertising brochures, and representative pages from WMH's 2001-2002 catalog of woodworking equipment. On October 12, 2004, the PTO withdrew its initial refusal to register and issued the '180 Reg.

**B. Procedural History**

On October 7, 2008, defendants served Mr. Clair with a subpoena commanding him to produce certain documents and testify at a deposition in this action. Plaintiff objected to the deposition, and to defendants' efforts to discover privileged communications. After unsuccessfully attempting to resolve the dispute without Court intervention, plaintiff filed a motion to quash or, alternatively, for a protective order [179]. In their response in opposition to that motion [189], defendants raised many of the same arguments that are presently before this Court. Among other things, defendants argued that Mr. Clair prepared the Response and the Box Declaration and is the only individual competent to testify regarding the inclusion and omission of certain facts from those documents. Defendants also sought Mr. Clair's testimony regarding the due diligence WMH exercised (or, according to defendants, failed to exercise) in the search for documents required by the PTO in connection with the Response.

At the time defendants noticed Mr. Clair's deposition, they had not taken any depositions in this case. Based on the record before this Court at that time, we found that defendants could not show that Mr. Clair had any unique knowledge of the facts at issue, or that it would be more difficult to obtain the information from a source other than Mr. Clair. [234]. Consequently, this Court granted plaintiff's motion to the extent it sought an order quashing the noticed deposition and subpoena directed to Mr. Clair.

However, we granted defendants leave to issue additional discovery requests, and to renew their request to take Mr. Clair's deposition if, after completing the depositions of WMH's witnesses, they could show that Mr. Clair has unique knowledge of disputed facts related to the '180 Reg.

Defendants complied with this Court's instructions. On March 23, 2009, defendants submitted to this Court excerpts from the individual and Fed. R. Civ. P. 30(b)(6) depositions of Robert Romano ("Mr. Romano") and Scott Box ("Mr. Box"), who executed the Box Declaration. Defendants renewed their request to depose Mr. Clair on April 22, 2009. This Court found that defendants' request was now ripe, and ordered defendants to submit a list of proposed deposition topics. We also granted each party leave to submit a statement summarizing that party's arguments regarding the privilege issues before this Court. On June 2, 2009, we heard oral arguments on defendants' renewed request to depose Mr. Clair and to compel production of certain documents that plaintiff contends are protected by the attorney-client privilege.

## II.    LEGAL STANDARD

Pursuant to Fed. R. Civ. P. 26(b)(1), "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense." Here, defendants seek to discover information that plaintiff contends is protected from disclosure by the attorney-client privilege. In the Seventh Circuit, the attorney-client privilege applies to communications that meet the following test: (1) where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose (4) made in confidence (5) by the client (6) are at his instance permanently protected (7) from disclosure by the client or the legal

4

advisor, (8) except where waived. *United States v. Evans* 113 F.3d 1457, 1461 (7th Cir. 1997) (citations omitted). The party seeking to invoke the privilege bears the burden of proving all of its essential elements. *Id.* (*citing United States v. White*, 950 F.2d 426, 430 (7th Cir. 1991)).

While litigation need not be pending for the attorney-client privilege to apply, only "those communications which reflect the lawyer's thinking or are made for the purpose of eliciting the lawyer's professional advice or other legal assistance fall within the privilege." *United States v. BDO Seidman*, 492 F.3d 806, 815 (7th Cir. 2003) (*citing United States v. Frederick*, 185 F.3d 496, 500 (7th Cir. 1999)). Documents that do not contain requests for legal advice or provide legal advice fall outside the scope of the privilege. *McCook Metals L.L.C. v. Alcoa, Inc.*, 192 F.R.D. 242, 253 (N.D. Ill. 2000). The attorney-client privilege does not protect the underlying facts communicated to an attorney. *See Upjohn Co. v. United States*, 449 U.S. 383, 395 (1981) ("The protection of the privilege extends only to communications and not to facts."). It also does not preclude disclosure of communications that contain only business advice. *See Burden-Meeks v. Welch*, 319 F.3d 897, 899 (7th Cir. 2003) ("Hiring lawyers to do consultants' work does not bring a privilege into play.").

With these requirements in mind, we turn to defendants' request to compel the deposition of plaintiff's counsel.

## III.    DISCUSSION

### A.  Defendants' Renewed Request to Depose Mr. Clair

This Court must preclude defendants from taking Mr. Clair's deposition if we determine that "the discovery sought is unreasonably cumulative or duplicative, or can

be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i); *see also Prevue Pet Prods., Inc. v. Avian Adventures, Inc.*, 200 F.R.D. 413, 418 (N.D. Ill. 2001) (reasoning that "a deposition of opposing counsel provides a unique opportunity for harassment; it disrupts the opposing attorney's preparation for trial, and could ultimately lead to disqualification of opposing counsel if the attorney is called as a trial witness.") (quotation omitted). Consistent with this Rule, we previously found that defendants had not shown that information related to the '180 Reg could not be gained through documents or other witnesses.

Having completed the additional discovery ordered by this Court, defendants now contend that Mr. Clair has independent knowledge of the facts communicated to – and withheld from – the PTO and that the "level of his involvement [goes] beyond the information" Mr. Clair received from WMH. Plaintiff disputes defendants' characterization of the role of its counsel. In oral arguments before this Court, Mr. Clair has affirmatively represented that his knowledge of the underlying facts communicated to the PTO is based entirely on information received from WMH.

> Your Honor, I'm telling you on the record, everything I received for this application [for the '180 Reg] I received from the client. I don't have independent knowledge about this industry. I don't have independent knowledge – I do now after being involved in this lawsuit, but when we are talking 2003, 2004, I came over to work for the plaintiff in this case, Jet Equipment and Tools, now named WMH Tool Group, from an entity that they purchased that was called Hand Tools International. The work I had done up until that date was primarily trademark work, some patent work on hand tools. So – and I'm just bring[ing] this out because there is a lot of speculation about what I did, what I brought to the table.

This Court has no reason to doubt any of Mr. Clair's representations. Nevertheless, we must consider if Mr. Clair's deposition is necessary because, as defendants claim, it is the only available means of discovering information crucial to this case.

6

The deposition excerpts submitted by defendants establish that WMH's witnesses cannot recall many of the relevant facts. For instance, during his March 17, 2009 deposition, Mr. Box testified that he could not recall how Mr. Clair received certain information from WMH, could not remember if he personally sent any information to Mr. Clair or suggested that Mr. Clair include certain information in the Response, and could not recall if he reviewed the Response before signing the Box Declaration. Moreover, while Mr. Box assumed that he had some input into the amended description of goods provided to the PTO, he could not be certain and did not remember if anyone checked to see "whether that list of goods was actually white." In a separate deposition taken pursuant to Fed. R. Civ. P. 30(b)(6), Mr. Box stated that he could not recall the specific facts set forth in the Box Declaration. Mr. Box also testified that "the attorneys" wrote the declaration, and he conversed with them about "a lot" of the facts asserted.

In his initial deposition pursuant to Fed. R. Civ. P. 30(b)(6) on February 10, 2009, Mr. Romano testified that he authorized Mr. Clair to prepare the application for the '180 Reg. Mr. Romano generally recalled the Response, but could not remember the content of specific conversations or identify any documents that he may have provided to Mr. Clair. He stated that he "most likely had a copy" of the Response and reviewed the document before Mr. Clair filed it with the PTO. Mr. Romano also testified that he could not specifically recall a file for the registration of the '180 Reg, but is "certain there was one." Mr. Romano did not believe that he had reviewed the file for the '180 Reg prior to the deposition.

Mr. Romano reviewed the documents relating to the '180 Reg prior to February 25, 2009, the date of his second deposition pursuant to Fed. R. Civ. P. 30(b)(6). During

7

that deposition, Mr. Romano testified that the documents Mr. Clair relied on in responding to the Office Action "would have been provided" by WMH. However, Mr. Romano also testified that he did not know if Mr. Clair reviewed any documents other than those provided by WMH. "[W]orking from memory" because he did not have any documents in front of him, Mr. Romano was able to identify a number of individuals who may have provided information or documents to Mr. Clair.

The testimony of WMH's witnesses establishes that WMH employees provided some, if not all, of the information Mr. Clair relied on in drafting the Response and the Box Declaration, and that WMH's corporate designee and current employees cannot, at this time, identify the specific source(s) of much of that information. In opposing defendants' request to depose its counsel, WMH argued that Mr. Romano and Mr. Box were unable to provide the detailed information sought because they were "going on [their] memory" of events that took place approximately five years before the depositions, and defendants' counsel did not present documents that would have refreshed their recollection. However, plaintiff did not cite any specific, non-privileged document that contains information that, had it been placed before the witnesses, would have refreshed their recollection of facts related to the '180 Reg. Accordingly, even if true, this argument is not persuasive.

Based on this Court's *in camera* review of certain documents discussed below, it appears that Karen Pindel, who served as Mr. Romano's legal assistant, may have some knowledge of the facts at issue. Ms. Pindel left WMH on February 1, 2007. Plaintiff informed this Court that Ms. Pindel, like many other former WMH employees who were involved in the acquisition of the '180 Reg, has not been deposed in this

case.  The cessation of her employment may explain why plaintiff has not produced Ms. Pindel as an additional witness pursuant to Fed. R. Civ. P. 30(b)(6).  Nevertheless, the departure of Mr. Romano's assistant does not justify his inability to testify regarding the deposition topics set forth in defendants' Fed. R. Civ. P. 30(b)(6) deposition notice.  Nor does it excuse WMH from providing a witness who can testify as to the specific information communicated to the PTO and/or excluded from the Response.

We find that defendants have met their burden to show that at least some of the information they seek to discover through Mr. Clair's deposition cannot be obtained from other sources.  Therefore, consistent with the limitations discussed below, defendants should be allowed to question Mr. Clair regarding the factual basis for WMH's communications to the PTO.  *See Srail v. Village of Lisle*, 2007 U.S. Dist. LEXIS 92363, *7 (N.D. Ill. Dec. 12, 2007) ("A party cannot insulate an attorney who has otherwise relevant knowledge from the process of discovery by having that attorney file an appearance in the pending case.") (citation omitted).

### B.  Defendants' Request to Compel Privileged Information

Defendants seek to compel the production of certain documents memorializing communications between WMH employees and plaintiff's counsel during the registration of the '180 Reg.  Defendants intend to use these communications, which are presumptively protected by the attorney-client privilege, in connection with the proposed deposition of Mr. Clair.  *See In re Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805-06 (Fed. Cir. 2000) (holding that communications relating to the prosecution of a patent application are privileged).  Defendants contend that the privilege does not apply because plaintiff placed the '180 Reg at issue by asserting claims for trademark

infringement and denying defendants' counterclaims.  In the alternative, defendants

argue that the privilege should be pierced by the crime fraud exception.  *See BDO*, 492

F.3d at 818-20 (addressing the crime-fraud exception to the attorney-client privilege).

Defendants also rely on the alleged waiver and the crime-fraud exception to support

their request to depose Mr. Clair regarding his mental impressions and confidential

communications with WMH employees.  We begin with defendants' request that this

Court find that plaintiff has waived the attorney-client privilege.

### 1. Waiver of the Attorney-Client Privilege

A waiver of the attorney-client privilege occurs when "a party voluntarily injects

new factual or legal issues into a case, the truthful resolution of which will require

examining confidential communications."  *Murata Mfg. Co., Ltd. v. Bel Fuse, Inc.*, 2007

U.S. Dist. LEXIS 17224, *19 (N.D. Ill. Mar. 8, 2007) (*citing Lorenz v. Valley Forge Ins.

Co.,* 815 F.2d 1095, 1097 (7th Cir. 1987), *Pyramid Controls, Inc. v. Siemens Indus.

Automations*, *Inc.* 176 F.R.D. 269, 271 (N.D. Ill. 1997)).

Here, defendants argue that plaintiff "squarely placed the validity and

enforceability of [the] '180 Reg at issue in this case" by asserting a claim for trademark

infringement.  However, merely asserting a claim for trademark infringement is not, in

and of itself, sufficient grounds for waiver.  *See, e.g. Knogo Corp. v. United States*, 1980

U.S. Ct. Cl. LEXIS 1262, *14 n. 6 (Ct. Cl. Feb. 16, 1980) ("The client does not waive the

privilege by bringing a suit which places the validity of the patent [at] issue.").  "To waive

the attorney-client privilege by voluntarily injecting an issue into the case, a defendant

must do more than merely deny a plaintiff's allegations.  The holder must inject a new

factual or legal issue into the case."  *Lorenz*, 815 F.2d at 1098 (reversing the district

court's determination that the defendant voluntarily waived the attorney-client privilege on the grounds that the defendant did nothing more than deny the plaintiffs' allegations). This usually occurs when a client asserts claims or affirmative defenses that put an attorney's advice at issue in the litigation. *Garcia v. Zenith Elecs. Corp.*, 58 F.3d 1171, 1175, n 1 (7th Cir. 1995).

In oral arguments before this Court, defendants' counsel was unable to identify any specific claim or defense that invokes plaintiff's confidential communications with its counsel. Nevertheless, defendants argued that "the attorney impressions come in because arguments are being made that . . . the woodworking market is a hobbyist market and therefore, all these other white machines that are out there . . . they're not in the hobbyist market, that's more of a commercial or industrial market . . . and that was a dead-on misrepresentation to the [PTO]." However, plaintiff has not asserted any allegations regarding the relevant market for its machines, plead advice of counsel as an affirmative defense, or otherwise placed attorney-client communications at issue in this case. *See, e.g. Murata Mfg.*, 2007 U.S. Dist. LEXIS 17224, *18 (noting that waiver occurs when the advice of counsel is put at issue); *Chamberlain Group v. Interlogix, Inc.*, 2002 U.S. Dist. LEXIS 5468, *8 (N.D. Ill. March 27, 2002) (holding that "[a] party must affirmatively use privileged communications to defend itself or attack its opponent in the action before the implicit waiver rule is applicable.") (citation omitted). Accordingly, defendants' arguments regarding plaintiff's alleged wavier are not well taken.

### 2. The Crime-Fraud Exception

Next, defendants contend that discovery into material that is otherwise protected

by the attorney-client privilege should be allowed under the crime fraud exception.[2]

"The crime-fraud exception places communications made in furtherance of a crime or fraud outside the attorney-client privilege." *BDO*, 492 F.3d at 818 (*citing United States v. Zolin*, 491 U.S. 554, 563, 109 S.Ct. 2619, 2626 (1989)). As the Supreme Court explained, "[t]he privilege takes flight if the relation is abused. A client who consults an attorney for advice that will serve him in the commission of a fraud will have no help from the law. He must let the truth be told." *Clark v. United States*, 289 U.S. 1, 15, 53 S.Ct. 465, 469 (1933).

To invoke the crime-fraud exception, the party seeking to abrogate the attorney-client privilege "must present *prima facie* evidence that gives colour to the charge by showing some foundation in fact." *BDO*, 492 F.3d at 819 (quotations omitted). The party must also demonstrate that "there is some reason to believe that the communications were intended to facilitate or conceal the alleged crime or fraud." *Abbott Labs. v. Andrx Pharms., Inc.*, 241 F.R.D. 480, 488 (N.D. Ill. 2007) (citations omitted). A *prima facie* showing of fraud "does not require evidence sufficient to support a verdict but, rather, enough evidence to require the party in the best position to explain things, to come forward with that explanation." *Miyano Mach. USA, Inc. v. Miyanohitech Mach.*, 2008 U.S. Dist. LEXIS 44707, *17 (N.D. Ill. June 6, 2008) (quotations omitted);

---

[2]The parties dispute the applicable standard for fraud. Defendants ask this Court to find that a trademark applicant commits fraud when it makes material representations of fact which it "knows or should know to be false." *See, e.g. Medinol Ltd. v. Neuro Vasx, Inc.*, 67 U.S.P.Q.2d 1205, 1209 (T.T.A.B. 2003); *Torres v. Cantine Torresella S.r.l.*, 808 F.2d 46, 49 (Fed. Cir. 1986). In contrast, plaintiff argues that a finding of fraud requires that the applicant "knowingly" made "false, material misrepresentations of fact" in connection with the application. *See, e.g. Maids to Order of Ohio, Inc. v. Maid-to-Order, Inc.*, 78 U.S.P.Q.2d 1899, 1905 (T.T.A.B. 2006). Because our ruling is the same under either standard, we do not reach this issue.

*see also BDO*, 492 F.3d at 819 (reasoning that the requesting party can meet its burden by showing sufficient evidence to require the proponent of the privilege to "come forward with an explanation for the evidence offered against it.") (*citing United States v. Davis*, 1 F.3d. 606, 609 (7th Cir. 1993)).  The privilege will remain if the court finds the explanation offered by the party asserting the privilege "satisfactory."  *BDO*, 492 F.3d at 819 (citation omitted).

Here, defendants primarily rely on the District Court's Order [109] granting their motion for a preliminary injunction prohibiting the seizure and detention of defendant Woodstock's white and off-white products. In connection with that motion, defendants argued that: (1) plaintiff could not acquire trademark rights in the color white/off-white due to prior third-party use of the color; and (2) the '180 Reg is subject to cancellation for fraud on the PTO in the procurement of the registration.  With regard to the alleged fraud, defendants claimed that WMH fraudulently stated a date of first use of 1996 for its woodworking machines, that WMH did not use the mark on at least two of the machines listed in the identification of goods section of the '180 Reg, and that WMH failed to disclose competitors' use of white as required by the trademark examiner.

Defendants submitted evidence to the District Court to support their contentions. That evidence included the testimony of George Blanchfield, plaintiff's vice president of sales.  Mr. Blanchfield admitted that he was aware of other companies in the metalworking field that manufacture the "same type" of products as WMH.  Mr. Blanchfield further admitted that those products "have a white color" and have been on the market prior to 1995, and from 1999 to the present.  Defendants submitted Mr. Blanchfield's testimony to this Court as an exhibit to their response in opposition to

13

plaintiff's motion to quash Mr. Clair's deposition [189-13].  The defendants submitted

additional exhibits to the District Court that are not presently before us.  However, we

note that the District Court characterized this evidence as showing "the use of the color

white/off-white on woodworking and metalworking machines by others prior to WMH's

first use of white/off-white on its machines continuing through the present."

After careful consideration of the evidence before it, the District Court found that

defendants "sufficiently demonstrated a likelihood of success on the merits of [their]

claim that the '180 Patent Registration is subject to cancellation for fraud on the PTO in

the procurement of the registration" [109].  The District Court also held that the evidence

put forth by defendants "sufficiently shows that WMH's '180 Trademark Registration did

not correctly identify the goods connected with the applied-for mark nor the correct date

of WMH's first use of the mark in connection with woodworking machines . . . . [and that]

WMH failed to fully address the PTO Office Action by failing to disclose other

manufacturers' previous use of white on their machines in the same or similar industry"

[109].

Relying on the District Court's initial determination that defendants could

demonstrate a likelihood of success on the merits of their claim that the '180 Reg is

subject to cancellation for fraud, defendants renewed their request to discover

documents that plaintiff contends are protected by the attorney-client privilege.  This

Court considered defendants' request under the standard articulated in *United States v.*

*Zolin*, 491 U.S. 554 (1989).  In that case, the Supreme Court held that *in camera* review

"may be used to determine whether allegedly privileged attorney-client communications

fall within the crime-fraud exception" where the party opposing the privilege "present[s]

14

evidence sufficient to support a reasonable belief that *in camera* review may yield evidence that establishes the exception's applicability." *Id.* 491 U.S. at 574-75. Before a reviewing court will conduct an *in camera* review, the party asserting the crime-fraud exception must show "a factual basis adequate to support a good faith belief by a reasonable person" that *in camera* review of the materials may reveal evidence establishing that the crime-fraud exception applies. *Id.* at 572 (quotations omitted); *see also Abbott Labs.*, 241 F.R.D. at 488 ("The showing that justifies an *in camera* review is less stringent than the showing required to meet the *prima facie* burden.") (quotations omitted). Once that showing is made, the decision to review the materials *in camera* "rests in the sound discretion of the district court." *Id.; see also Heriot v. Byrne*, 2009 U.S. Dist. LEXIS 22552, *28 (N.D. Ill. Mar. 20, 2009) (applying the *Zolin* factors). After considering the District Court's conclusions, as well as the transcript of Mr. Blanchfield's testimony and other evidence defendants submitted in connection with their opposition to plaintiff's motion for a protective order [189], we found that *in camera* review of the documents was warranted [321].

### C. *In Camera* Review of the Allegedly Privileged Communications

There are thirty-four documents at issue. With limited exception, the documents consist of email and written correspondence between WMH employees and outside counsel, initially Shaukat Karjeker of Stoel Rives LLP, and later Mr. Clair. The documents also include emails from Mr. Romano, WMH's general counsel, or his assistant Karen Pindel, requesting information related to the '180 Reg, along with responses from various WMH employees. The documents are dated February 27, 2002 through October 29, 2004. On their face, virtually all of the documents concern the

15

trademark application and/or WMH's use of the color white.

This Court carefully reviewed the documents and considered whether they contain evidence sought by defendants. Specifically, we looked for evidence of any inaccurate statements or efforts to conceal facts related to: (1) the description and identification of goods; (2) the date of first use of the goods listed in the '180 Reg; or (3) prior knowledge of third-party use(s) of the color white in connection with woodworking and metalworking machines. We also looked for any suggestion or request that WMH withhold information from the PTO.

None of the documents show any evidence of fraud. The documents include draft drawings, emails in which WMH's counsel identifies additional information required for the Response or explains the PTO's actions, and emails providing material for counsel to evaluate for use in connection with the initial application and Response. *See Miyano Mach.*, 2008 U.S. Dist LEXIS 44707, *12 (noting that the attorney-client dialogue which gave birth to a trademark application is privileged) (quotation omitted). After reviewing each of the documents *in camera*, there is simply no basis for this Court to find that any of the communications were "intended to facilitate or conceal the alleged crime or fraud." *Abbott Labs.,* 242 F.R.D. at 488. Accordingly, defendants' request to compel their production under the crime-fraud exception is denied.

### D. Plaintiff Must Produce Additional Documents

A number of the aforementioned documents include attachments. In oral arguments before this Court, plaintiff stated that some of those attachments contain only facts, and therefore these documents have been produced to defendants. This Court has no reason to doubt plaintiff's representations. Nevertheless, in an abundance of

caution, we order plaintiff to (re)produce the following documents: WMH400080, with the handwritten note redacted; WMH 313308; and WMH 313603-07.

We also find that the document bates labeled WMH 313316-21 must be produced. This document is an email from Ms. Pindel addressed to "WMH-ALL." It informs the recipients – apparently all of WMH's employees – that the PTO has issued a Certificate of Registration for the '180 Reg. Plaintiff has not shown that the recipients of this email were entitled to know privileged communications, or that WMH intended to limit further dissemination of this document or its contents. Accordingly, plaintiff's privilege objection is not well founded as to this document. *See Muro v. Target Corp.*, 243 F.R.D. 301, 307-10 (N.D. Ill. 2007) (granting motion to compel); *Baxter Travenol Labs, Inc. v. Abbott Labs*, 1987 U.S. Dist. LEXIS 10300, *14 (N.D. Ill. June 19, 1987) ("Where the client is a corporation, the privilege is waived if the communications are disclosed to employees who did not need access to the communication.").

### E.  The Scope of the Proposed Deposition of Plaintiff's Counsel

Defendants also rely on the crime-fraud exception to support their request for an order precluding plaintiff from relying on a claim of privilege as a basis for withholding testimony. Consistent with that request, defendants seek to depose Mr. Clair regarding, among other things, the source(s) for all information and documents relating to the '180 Reg; his involvement in drafting the Response and the Box Declaration; and his knowledge of third-party uses of white, the market in which WMH competes, and the alleged infringements of the '180 Reg. In the event this Court finds, as we have, that Mr. Clair's deposition should proceed, plaintiff argues that the deposition must be limited to matters that do not implicate information protected as attorney-client privileged

communications or work product.  *See aaiPHARMA, Inc. v. Kremers Urban Dev. Co.*, 361 F.Supp.2d 770, 776-77 (N.D. Ill. 2005) (allowing deposition to proceed only on non-privileged topics and preserving right to assert privilege objections).  To resolve this dispute, we must determine if the evidence before us, including the privileged communications submitted for *in camera* review, constitutes a sufficient *prima facie* showing to abrogate the attorney-client privilege.  We find it does not.

Defendants have not produced any independent evidence of an intent to deceive the PTO, or shown that WMH made material representations of fact that it knew or should have known to be false.  In order to "drive the privilege away, there must be something to give colour to the charge; there must be *prima facie* evidence that has some foundation in fact."  *Clark*, 289 U.S. at 15 (quotation omitted)*; see also Abbott Labs,* 241 F.R.D. at 488 ("[A] party seeking to overcome the attorney-client privilege need not conclusively prove fraud, or necessarily submit direct evidence in order to make the required *prima facie* showing, but must produce something more than evidence of the patentee's failure to cite to the PTO material information of which the patentee was aware.") (citation omitted).  To support their claim of fraud during the prosecution of the '180 Reg, defendants rely on Mr. Box's testimony that he was aware of "several companies" that sold white products for "many years" but not "quite" as far back as 1996.  However, defendants have not shown that the woodworking products Mr. Box referenced are in the same market as WMH's products, that Mr. Box was aware of those products at the time he executed the Box Declaration, or that Mr. Box withheld information from the PTO.  Accordingly, Mr. Box's testimony is not, in and of itself, sufficient *prima facie* evidence of fraud.

18

Defendants also rely on Mr. Blanchfield's admission that he was aware of third-party uses of the color white. However, defendants have not shown that these third-parties made products that were similar in form and function to WMH's products. Defendants also have not provided a basis for this Court to find that Mr. Blanchfield, who neither authored nor received any of the privileged communications submitted for *in camera* review, was employed by WMH at the time it registered the '180 Reg. Finally, defendants have not demonstrated that any of WMH's statements to the PTO are directly contracted by Mr. Blanchfield's deposition testimony.

We find that defendants have not met their burden to submit *prima facie* evidence of WMH's alleged fraud. In addition to the absence of evidence of plaintiff's alleged fraudulent intent, defendants also have not identified a specific product, then known to WMH, that should have been disclosed in response to the trademark examiner's inquiry as to "whether competitors produce the same or similar goods in the identified color." Therefore, defendants cannot rely on the crime-fraud exception to pierce the attorney-client privilege. *See Spaulding Sports*, 203 F.3d at 807 (concluding that the crime-fraud exception does not apply where the party seeking to set aside the privilege failed to provide any evidence of fraudulent intent).

## IV.    CONCLUSION

For the reasons stated above, defendants' request to depose Mr. Clair is granted in part and denied in part, and defendants' request that this Court preclude plaintiff from relying on the attorney-client privilege as a basis for withholding testimony and documents is denied. Defendants may depose Mr. Clair regarding: (1) any facts related to the registration of the '180 Reg that he independently discovered or learned through

any source other than WMH; (2) the facts asserted in the Response, the Box Declaration, and in any other communications with the PTO related to the '180 Reg; (3) the source of those facts; and (4) the identity of any individual(s) who provided him with information related to the registration of the '180 Reg, regardless of whether or not that information was subsequently transmitted to the PTO. This information must be disclosed. *See Miyano Mach.*, 2008 U.S. Dist. LEXIS 44707, *26 (noting that statements between counsel and his client regarding the factual basis for representations in a declaration are not privileged and must be disclosed). Plaintiff may object to any questions that seek to discover Mr. Clair's mental impressions or information otherwise protected by the attorney-client privilege. *See aaiPHARMA, Inc.*, 361 F.Supp. 2d at 777 (finding that the best procedure is to allow the party asserting the privilege to assert objections for each particular question or responsive document) (citations omitted). Finally, this Court finds plaintiff's arguments regarding the temporal limitations of Mr. Clair's proposed deposition persuasive. Defendants are cautioned that Mr. Clair's testimony is limited to his knowledge of facts prior to October 12, 2004. *See V&V Food Prods., Inc. v. Cacique Cheese Co.*, 683 F.Supp. 662, 666 (N.D. Ill. 1998) ("[T]he registrant will be found to have acted fraudulently if, at the time he signed the statutory oath in the application for federal registration, he actually possessed knowledge of the existence of another person's right to use that mark in commerce.") (citation omitted).

ENTERED:

MICHAEL T. MASON
United States Magistrate Judge

DATED: July 6, 2009