IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WMH TOOL GROUP, INC., | ) |
| Plaintiff/Counterclaim Defendant, | ) ) ) |
| v. | ) Civil Action No. 07-cv-3885 ) ) Hon. Judge John W. Darrah |
| WOODSTOCK INTERNATIONAL, INC., and GRIZZLY INDUSTRIAL, INC. | ) ) Magistrate Judge Michael T. Mason ) ) |
| Defendants/Counterclaim Plaintiffs. | ) |

**DEFENDANTS'/COUNTER-PLAINTIFFS' RULE 56.1(a)(3) STATEMENT OF MATERIAL FACTS IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

Pursuant to Local Rule 56.1(a)(3) of the United States District Court for the Northern District of Illinois, defendants/counter-plaintiffs Grizzly Industrial, Inc. (Grizzly) and Woodstock International, Inc. (Woodstock) (collectively "G&W") rely on the following material facts to which there is no genuine issue and entitle defendants to judgment as a matter of law.

### A. THE PARTIES

1. Plaintiff WMH Tool Group, Inc. ("WMH") is a corporation organized under the laws of the State of Washington with its principal place of business at 2420 Vantage Drive, Elgin, Illinois 60124. (Complaint ¶1, Dkt No. 1; Answer to Amended Counterclaims ¶2, Dkt No. 89). Woodstock and Grizzly are corporations organized under the laws of the State of Washington, with principal places of business in Bellingham, Washington. (Complaint ¶2, Dkt No. 1; Answer to Complaint ¶3, Dkt No. 21).

### B. JURISDICTION AND VENUE

2. This Court has jurisdiction over the subject matter of this action under 15 U.S.C. § 1119, 1121 and 28 U.S.C. §§ 1331 and 1338(a) and 1338(b), 1367, and 2201. (Complaint ¶6, Dkt No. 1; Counterclaims ¶4, Dkt No. 21).

3. WMH admitted that the Court has jurisdiction and that venue is proper in this District. (Answer to Amended Counterclaims ¶¶4-5, Dkt No. 89).

4. G&W admitted that this Court has jurisdiction and that venue is proper in this District. (Answer to Complaint ¶¶6-8, Dkt No. 21).

## C. BACKGROUND

5. WMH is the owner of U.S. Reg. No. 2,893,180 (the '180 Reg) for the color white as applied to the exterior surfaces of woodworking and metalworking machines at the rectangular base thereof. (Complaint ¶11, Dkt No. 1). WMH sells woodworking and metalworking machinery under the JET brand. (Complaint ¶9).

6. Mr. Shiraz Balolia founded Grizzly in 1983; Grizzly has been selling woodworking and metalworking machinery since 1983; Mr. Balolia founded Woodstock in 1989; Woodstock began selling woodworking accessories in 1989, and began selling woodworking machinery "under the brand name SHOP FOX" in 2001. (**Ex. 1**, Balolia Decl. ¶¶2, 26-27).

7. WMH sells power saws, bandsaws, tablesaws, cabinet saws, planers, jointers, molders, shapers, mortisers, grinders, milling machines, lathes, and sanders. (**Ex. 4**, Excerpts from various JET catalogs); WMH's JET brand woodworking and metalworking machinery is a white color with red and black color trim at the base (**Ex. 2**, JET catalog covers); WMH began using its alleged WHITE mark on certain metalworking machines in 1996 (**Ex. 3**, 1/17/2008 Preliminary Inj. Hg Tr. ("Hg Tr.") 99:22 – 100:5 (Blanchfield testimony)), and began using its alleged WHITE mark in connection with certain woodworking machines in 1998. (**Ex. 3**, Hg Tr. 102:9-13 (Blanchfield testimony)).

## D. USE OF WHITE-LOOKING COLORS FOR WOODWORKING AND METALWORKING MACHINES

### GRIZZLY

8. Grizzly's 1983, 1984 and 1985 catalogs featured a white-looking band-saw. (**Ex. 1**, Balolia Decl. ¶15; **Ex. 5**, Grizzly '83 – '85 catalog excerpts; **Ex. 3**, Hg Tr. 63-64); Grizzly's 1986 catalog featured a surface grinder with a white-looking base. (**Ex. 1**, Balolia Decl. ¶16; **Ex. 6**, 1986 Grizzly catalog excerpt), and a white-looking dust collector. (**Ex. 1**, Balolia Decl. ¶16; **Ex. 7**, 1986 Grizzly catalog excerpt). Since 1986, Grizzly has continuously advertised and sold a dust-collection machine that is predominately white. (**Ex. 1**, Balolia Decl. ¶17; **Ex. 7**, 1986 Grizzly catalog excerpt; **Ex. 3**, Hg Tr. 63-64).

### WOODSTOCK

9. Woodstock began manufacturing and selling white-looking woodworking machinery in 2001. (**Ex. 1**, Balolia Decl. ¶2).

2

**CHEVALIER**

10. Johnson Lan is the VP of Sales at Chevalier Machinery and has been employed by Chevalier since 1985. (**Ex. 8**, Lan Dep. Tr. 6:18-24). Mr. Lan testified that Chevalier has manufactured and sold metalworking machinery since 1982. (**Ex. 8**, Lan Dep Tr. 7:1-13).

11. Mr. Lan identified Chevalier Dep. Ex 2 as a panel from a Chevalier grinder that was sold from 1985-1990. (**Ex. 8**, Lan Dep. Tr. 7:22 – 8:1; 8:19-21; **Ex. 9**, Chevalier Dep. Exs. 2 and 2(a); **Defendants' Demonstrative Ex. 2**, p.1). Mr. Lan identified Chevalier Dep. Ex 3 as depicting a plate from a current Chevalier machine (**Ex. 8**, Lan Dep. Tr. 9:6-13; **Ex. 10**, Chevalier Dep. Exs. 3 and 3(a); **Defendants' Demonstrative Ex. 2**, p. 1). Mr. Lan testified that Chevalier Dep. Ex. 4 shows a Chevalier surface grinder manufactured in the 1980's. (**Ex. 8**, Lan Dep. Tr. 11:8-20; **Ex. 11**, Chevalier Dep. Ex. 4; **Defendants' Demonstrative Ex. 2**, p. 1). Mr. Lan testified that the surface grinder shown in Chevalier Dep. Ex. 6 has been sold by Chevalier since 2004. (**Ex. 8**, Lan Dep. Tr. 13:8 – 14:5; **Ex. 12**, Chevalier Dep. Ex. 6). The color of Chevalier's machines shown in Chevalier Dep. Ex. 2 has remained the same since 1988. (**Ex. 8**, Lan Dep. Tr. 10; **Ex. 9**, Chevalier Dep. Ex. 2; **Defendants' Demonstrative Ex. 2**, p. 1).

12. Mr. Lan testified that Chevalier has displayed its machines at trade shows since 1984 and advertised its machines in trade publications since prior to 1995. (**Ex. 8**, Lan Tr. 24:9 – 25:2).

13. Mr. Ivan Spielfogel is the National Sales Manager of Chevalier and has worked in the metalworking industry for approximately 30 years. (**Ex. 13**, Spielfogel Decl. ¶ 1). Mr. Spielfogel stated in his declaration that Chevalier has manufactured and sold metalworking machinery being predominately white in color since the early 1980s. (**Ex. 13**, Spielfogel Decl. ¶ 2), and that Chevalier metalworking products have been advertised and displayed at trade shows and in trade publications since prior to 1995. (**Ex. 13**, Spielfogel Decl. ¶ 3).

**MAKITA USA**

14. David Haefner is the District Sales Manager for Makita USA ("Makita"). (**Ex. 14**, Haefner Dep Tr. 5:17-21; 6:12-13). Makita manufactures and sells woodworking power tools. (**Ex. 14**, Haefner Dep. Tr. 6:18 – 7:3). Mr. Haefner testified that Makita Dep. Ex 3 is a blade case of a Makita miter saw that has been sold in that color since 1990 and that Makita Dep. Ex. 3(a) is a photograph of the same base. (**Ex. 14**, Haefner Dep. Tr. 9:4 – 10:4; **Ex. 15**, Makita Dep. Exs. 3 & 3(a)). Mr. Haefner testified that Makita's miter saws which are the

3

same color as Makita Dep. Ex. 3 have been advertised in trade publications and exhibited at trade shows. (**Ex. 14,** Haefner Dep Tr. 15:4-11; 16:14 – 17:6; **Ex. 15,** Makita Dep. Ex. 3), and that the Makita miter saw is used by hobbyists and any other woodworkers (**Ex. 14**, Haefner Dep. Tr. p. 9).

**ACER**

15.  David Lo is the President of Supra Machine Tool ("Supra") and has been associated with Supra since around 1980. (**Ex. 16**, Lo Dep Tr. 7:22 – 8:1; 8:6-8). Mr. Lo testified that Supra sells metalworking machines under the Acer brand. (**Ex. 16**, Lo Dep Tr. 8:12-17). Mr. Lo testified that metalworking machines sold under the Acer brand include milling machines, grinders and lathes. (**Ex. 16**, Lo Dep Tr. 10:10-14).

16.  Mr. Lo testified that Acer Dep. Ex 2 is a physical door panel from a Supra grinder which was manufactured in or around 1991. (**Ex. 16**, Lo Dep Tr. 8:19-24; 9:5-7; **Ex. 17**, Acer Dep Ex. 2; **Defendants' Demonstrative Ex. 2**, p. 3). Mr. Lo testified that the color of Acer Dep. Ex 2 is the color of Acer machinery. (**Ex. 16**, Lo Dep Tr. 9:11-13; **Ex. 17**, Acer Dep. Ex. 2), and that Supra currently sells 58 models of Acer metalworking machines having the same color as Acer Dep. Ex 2. (**Ex. 16**, Lo Dep. Tr. 10:15-22; **Ex. 17**, Acer Dep. Ex. 2). Mr. Lo testified that Supra has sold Acer metalworking machines having the same color as Acer Dep. Ex 2 since around 1989. (**Ex. 16**, Lo Dep. Tr. 10:23 – 11:2; **Ex. 17**, Acer Dep. Ex. 2; **Defendants' Demonstrative Ex. 2**, p. 3). Mr. Lo testified that the color of the machines shown in the Acer catalog distributed prior to 1995 (**Ex. 19**, Acer Dep. Ex. 6) are the same color as shown in Acer Dep Exs. 2 and 3 (**Exs. 17 & 18**). (**Ex. 16**, Lo Dep. Tr. 19:2-19; **Ex. 19**, Acer Dep. Ex. 6; **Defendants' Demonstrative Ex. 3**). Mr. Lo testified that the Acer machine shown in Acer's 1990 brochure is the same color as the panel of Acer Dep. Ex. 2. (**Ex. 16**, Lo Dep Tr. 17:4-11; Acer Dep Ex. 2), and that the color of the Acer panel (**Exs. 17 & 18**), has been the same from prior to 1995 to 2008 (**Ex. 16**, Lo Dep. Tr. 11:3-6). Mr. Lo testified that the Acer milling machine shown in Acer Dep. Ex. 16 was on the market in 1991. (**Ex. 16**, Lo Dep. Tr. 25:13 – 26:10; **Ex. 20**, Acer Dep. Ex. 16; **Defendants' Demonstrative Ex. 2**, p. 3).

17.  Mr. Lo testified that Acer machines have been displayed at trade shows every year since 1995, including the IMTS, one of the major metalworking trade shows in the U.S. (**Ex. 16**, Lo Dep. Tr. 11:7 – 12:1). Mr. Lo testified that Acer machines displayed at trade shows since 1995 have been the same color as Acer Dep. Exs. 2 and 3. (**Ex. 16**, Lo Dep Tr. 12:2-5; **Exs. 17 & 18**, Acer Dep. Exs. 2 & 3). Mr. Lo testified that Acer machines are advertised in trade publications every month. (**Ex. 16**, Lo Dep. Tr. 12:17 – 13:4; 13:15-17).

4

Mr. Lo testified that Supra has advertised Acer machines in trade publications in the same color as Acer Dep. Exs. 2 and 3 since at least 1992. (**Ex. 16**, Lo Dep. Tr. 13:7-17; **Exs. 17 & 18**, Acer Dep. Exs. 2 & 3). Mr. Lo testified that some of Acer's machines are used by small machine shops. (**Ex. 16**, Lo Dep. Tr. p. 14). Mr. Lo testified that some of Acer's machines are comparable to some of JET's, e.g., grinders and milling machines. (**Ex. 16**, Lo Dep. Tr. 15, 16)

### SCM GROUP USA/SCMI – MINI MAX

18. Robin Stansell is a parts specialist for SCM Group USA ("SCM USA") and has been employed by SCM USA since 1987. (**Ex. 21**, Stansell Dep. Tr. 11:5-14). Ms. Stansell testified that SCM USA imports and sells industrial woodworking equipment under several brands including SCMI and Mini Max. (**Ex. 21**, Stansell Dep. Tr. 11:15-21).

19. Ms. Stansell testified that SCM Dep. Ex. 3 is a physical part of a bandsaw door and SCM Dep. Ex 3(a) is a photo of the same door. (**Ex. 21**, Stansell Dep. Tr. 12:11-18; **Ex. 22**, SCM Dep. Exs. 3 and 3(a); **Defendants' Demonstrative Ex. 2**, p. 2). Ms. Stansell testified that since 1991 SCM USA has sold bandsaws having the same color as the bandsaw door of SCM Dep. Ex 3. (**Ex. 21**, Stansell Dep. Tr. 13:12-15; **Ex. 22**, SCM Dep. Ex. 3). Ms. Stansell testified that SCM manufactured the bandsaw shown in SCM Dep. Ex. 4 in 1991. (**Ex. 21**, Stansell Dep. Tr. 12:22 – 13:10; **Ex. 23**, SCM Dep. Ex. 4).

20. Ms. Stansell testified that Mini Max lathes in the color shown in SCM Dep. Ex. 7 have been on the market since at least January 1998. (**Ex. 21**, Stansell Dep. Tr. 19:18 – 19:24; **Ex. 26**, SCM Dep. Ex. 7; **Defendants' Demonstrative Ex. 2**, p. 2). Ms. Stansell testified that SCM Dep. Ex. 5 is a door from a woodworking sander that SCM has manufactured and sold in the U.S. since at least 1998 to the present date and SCM Dep. Ex. 5(a) is a photo of the same door. (**Ex. 21**, Stansell Dep. Tr. 13:19 – 15:4; **Ex. 24**, SCM Dep. Exs. 5 and 5(a); **Defendants' Demonstrative Ex. 2**, p. 2). Ms. Stansell testified that SCM Dep. Ex. 6 is a chip breaker from a sliding table saw that SCM has manufactured and sold in the U.S. since at least 1998 to the present date and SCM Dep. Ex. 6(a) is a photo of the same chip breaker. (**Ex. 21**, Stansell Dep. Tr. 15:6-19; **Ex. 25**, SCM Dep. Exs. 6 and 6(a); **Defendants' Demonstrative Ex. 2**, p. 2). Ms. Stansell testified that SCM Dep. Ex. 7 is a door from a Mini Max lathe that SCM has manufactured and sold in the U.S. since at least 1998 to the present date and SCM Dep. Ex. 7(a) is a photo of the same door. (**Ex. 21**, Stansell Dep. Tr. 15:20 – 16:16; **Ex. 26**, SCM Dep. Exs. 7 and 7(a)). Ms. Stansell testified that SCM Dep. Ex. 8 is a cover for a sliding table saw that SCM has manufactured and sold in the U.S. since at least 1998 to the present date and that SCM Dep. Ex. 8(a) is a photo of the same

cover. (**Ex. 21**, Stansell Dep. Tr. 17:3-23; **Ex. 27**, SCM Dep. Exs. 8 and 8(a); **Defendants' Demonstrative Ex. 2**, p. 2). Ms. Stansell testified that SCM Dep. Ex. 30 is a Mini Max USA price list showing products that are the same color as SCM Dep. Ex 7. (**Ex. 21**, Stansell Dep. Tr. 18:1-17; **Ex. 28**, SCM Dep. Ex. 30; **Ex. 26**, SCM Dep. Ex. 7). Ms. Stansell testified that Mini Max products in the same color as Stansell Dep. Ex 7 have been displayed at trade shows from 1998 to the present date (**Ex. 21**, Stansell Dep. Tr. 19:18-24; **Ex. 26**, SCM Dep. Ex. 7). Ms. Stansell testified that since 1998 Mini Max machines have been advertised in woodworking publications in the same color as the door of Stansell Dep. Ex. 7. (**Ex. 21**, Stansell Dep. Tr. 21:24 – 22:11; **Ex. 26**, SCM Dep. Ex. 7). Ms. Stansell testified that Stansell Dep. Exs. 10, 11 and 12 are brochures/catalogs of Mini Max products. (**Ex. 21**, Stansell Dep. Tr. 23:1-25, 25:6-16; **Ex. 29**, Stansell Dep. Exs. 10 and 11; **Ex. 30**, Stansell Dep. Ex. 12; **Defendants' Demonstrative Ex. 3**, p. 3). Ms. Stansell testified that Mini-Max bandsaws are appropriate for small woodworking shops. (**Ex. 21**, Stansell Dep. Tr. 18)

**TIMESAVERS**

21. Mr. Timothy Mueller is the Marketing Manager for Timesavers Inc. ("Timesavers") and has been with Timesavers for 21 years. (**Ex. 32**, Mueller Dep. Tr. 7:18 – 8:5). Mr. Mueller testified that Timesavers is a machine tool manufacturing company that manufactures both woodworking and metalworking machines and specifically wide belt sanding equipment. (**Ex. 32**, Mueller Dep. Tr. 14:11 – 20).

22. Mr. Mueller testified that in 1993, Timesavers manufactured machines having a "very, very light gray" looking color ("Lumina"), such as the 100 Series International Class Wide Belt Sander. (**Ex. 32**, Mueller Dep. Tr. 17:8 – 18:1). Mr. Mueller testified that in 1994 and 1995, Timesavers advertised "Lumina" colored machines such as its wide belt sander in trade publications such as, for example, Wood Digest and CabinetMaker Magazine. (**Ex. 32**, Mueller Dep. Tr. 26:7 – 28:13; **Ex. 33**, Timesavers Dep. Exs. 8 & 9; **Defendants' Demonstrative Ex. 3**, p. 4).

23. Mr. Mueller testified that Timesavers manufactured and sold "Lumina" colored machines from 1993 until 2002. (**Ex. 32**, Mueller Dep. Tr. 22:14-19). Mr. Mueller testified that from 1993 through 2002, Timesavers displayed Lumina colored machines at trade shows. (**Ex. 32**, Mueller Dep. Tr. 29:22 – 30:16). Mr. Mueller testified that in 2002, Timesavers switched the color of its machines to "Signal White." (**Ex. 32**, Mueller Dep. Tr. 29:22 – 30:16). Mr. Mueller testified that Timesavers Dep. Ex. 2 is a door from a Timesavers speed sanding machine and that Timesavers Dep. Ex. 2(a) is a photo of the part identified as

6

Timesavers Dep. Ex. 2. (**Ex. 32**, Mueller Dep. Tr. 15:13 – 16:7; **Ex. 34**, Timesavers Dep. Exs. 2 and 2(a)).

24. Mr. Mueller testified that the color of the part identified as Timesavers Dep. Ex. 2 is known by Timesavers as "Signal White." (**Ex. 32**, Mueller Dep. Tr. 19:15-20; **Ex. 34**, Timesavers Dep. Ex. 2). Mr. Mueller testified that Timesavers started advertising and selling "Signal White" colored machines in 2002 and have continuously advertised and sold such machines up until the present time. (**Ex. 32**, Mueller Dep Tr. 16:8-16; **Ex. 34**, Timesavers Dep. Ex. 2; **Defendants' Demonstrative Ex. 2**, p. 4). Mr. Mueller testified that Timesavers has attended trade shows, and since 2002 has displayed "Signal White" colored machines. (**Ex. 32**, Mueller Dep. Tr. 29:15-21). Mr. Mueller testified that Timesavers sanders are used in woodworking shops that employ less than ten people. (**Ex. 32**, Mueller Dep. Tr. 31).

**PISTORIUS**

25. Since 1986, Robert Pistorius has been the President and owner of Pistorius Machine Company ("Pistorius"). (**Ex. 35**, Pistorius Dep. Tr. 4:8-17). Mr. Pistorius testified that Pistorius manufactures and sells metalworking and woodworking machinery. (**Ex. 35**, Pistorius Dep. Tr. 4:18-25).

26. Mr. Pistorius testified that Pistorius Dep. Ex. 2 is a piece of sheet metal with white colored paint that is the same color that Pistorius currently uses for its machines. (**Ex. 35**, Pistorius Dep. Tr. 5:24 – 6:4; **Ex. 36**, Pistorius Dep. Ex. 2; **Defendants' Demonstrative Ex. 2**, p. 4). Mr. Pistorius testified that Pistorius machines have been sold in the U.S. in the same color as Pistorius Dep. Ex. 2 since at least 1993. (**Ex. 35**, Pistorius Dep Tr. 5:6-23; 6:25 – 7:8; **Ex. 36**, Pistorius Dep. Ex. 2).

27. Mr. Pistorius testified that Pistorius Dep. Ex. 3 is a 1994 Pistorius brochure showing woodworking machines having a white base. (**Ex. 35**, Pistorius Dep. Tr. 7:22 – 8:25; **Ex. 37**, Pistorius Dep. Ex. 3). Mr. Pistorius testified that Pistorius Dep. Ex. 4 is a 1996 Pistorius sales brochure which on page 10 shows a mitering saw having a white colored base that can be used in cabinet shops. (**Ex. 35**, Pistorius Dep. Tr. 9:2-8; 9:23 – 10:16; **Ex. 38**, Pistorius Dep. Ex. 4; **Defendants' Demonstrative Ex. 3**, p. 1). Mr. Pistorius testified that Pistorius has attended trade shows and exhibited its white machines since 1993. (**Ex. 35**, Pistorius Dep. Tr. 16:22 – 17:20). Mr. Pistorius testified that Pistorius also advertises its machines in trade publications. (**Ex. 35**, Pistorius Dep. Tr. 18:7-9).

**ONEWAY**

28. Mr. Tymen Clay is the founder and owner of started OneWay Manufacturing ("OneWay") which was founded around 1980-82, and that OneWay manufactures lathes. (**Ex. 39**, Clay Decl. ¶1; **Ex. 40**, Clay Dep. Tr. 6-7). Mr. Clay stated in his declaration that in 1995 and 1996, OneWay developed a white or partially white colored woodworking lathe, which has been advertised and displayed at trade shows and in trade publications since 1996. (**Ex. 39**, Clay Decl. ¶2-3; **Ex. 40**, Clay Dep. Tr. 7). Mr. Clay testified that Ex. 2 is the color of OneWay lathes for the past 14 years. (**Ex. 40**, Clay Dep. Tr. 8; **Defendants' Demonstrative Ex. 2**, p. 4).

29. Mr. Clay testified that the primary market for OneWay lathes is the woodworking hobbyist and small professional, and that OneWay and JET lathes could be used for the same jobs. (**Ex. 40**, Clay Dep. Tr. 13-14). Mr. Clay, the owner and President of OneWay, stated in his declaration that he is aware of other manufacturers of woodworking and metalworking machinery, besides OneWay, that use the color white on their machines. (**Ex. 39**, Clay Decl. ¶4).

**FRYER**

30. Lawrence H. Fryer is the President of Fryer Machine Systems ("Fryer"). (**Ex. 41**, Fryer Dep. Tr. 4:6-8). Fryer manufactures and sells metal cutting machinery. (**Ex. 41**, Fryer Dep. Tr. 4:15 – 5:4). Mr. Fryer testified that Fryer Dep. Ex. 5 is a piece of metal from a white-looking Fryer metal cutting machine. (**Ex. 41**, Fryer Dep. Tr. 7:10-11; **Ex. 42**, Fryer Dep. Ex. 5; **Defendants' Demonstrative Ex. 2**, p. 1).

31. Mr. Fryer testified that the color of the piece identified as Fryer Dep. Ex. 5 is referred to by Fryer as "Fryer white" (**Ex. 41**, Fryer Dep. Tr. 7:10-11; 7:19 – 8:24; **Ex. 42**, Fryer Dep. Ex. 5). Mr. Fryer testified that Fryer has been using "Fryer White" on its metal cutting machines since 1996. (**Ex. 41**, Fryer Dep. Tr. 7:10-11; 7:19 – 8:24; **Ex. 42**, Fryer Dep. Ex. 5). Mr. Fryer testified that Fryer has sold lathes and milling machines in "Fryer White" every year since 1996. (**Ex. 41**, Fryer Dep. Tr. 8:4-7). Mr. Fryer testified that Fryer Dep. Ex. 6 is a Fryer brochure that shows Fryer lathes in "Fryer White." (**Ex. 41**, Fryer Dep. Tr. 8:11-14; 8:24 – 9:6; **Ex. 43**, Fryer Dep. Ex. 6).

32. Mr. Fryer testified that Fryer Dep. Ex. 7 is a Fryer brochure that shows Fryer milling machines in "Fryer White." (**Ex. 41**, Fryer Dep. Tr. 8:20 – 9:6; **Ex. 44**, Fryer Dep. Ex. 7). Mr. Fryer testified that Fryer has displayed machines in "Fryer White" at trade shows for thirteen years. (**Ex. 41**, Fryer Dep. Tr. 9:7-22). Mr. Fryer testified that Fryer has, since

8

1996, advertised "Fryer white" machines in trade publications on a monthly basis (**Ex. 41**, Fryer Dep. Tr. 9:23 – 10:10).

33. Mr. Fryer testified that he was aware of "quite a few" other manufacturers in the metalworking industry that manufacture or sell white-colored machinery. Mr. Fryer testified that "It appears to be quite common that there are different shades of white, cream, you know, light colored machines out there," and that he has been aware of others using white for about 30 years. (**Ex. 41**, Fryer Dep. Tr. 14). Mr. Fryer testified that Fadel, Haas and Milltronics are at least some of the other companies that he believes manufacture "primarily white" or "almost-white" metalworking machinery. (**Ex. 41**, Fryer Dep. Tr. 13:23 – 14:13).

### DELTA

34. Mr. Box, WMH's former vice president of sales and marketing, testified that from 1982 until 2001, he worked for Delta Machinery Corp. ("Delta). (**Ex. 45**, 11/6/07 Box Dep. Tr. 11:9-12).

35. Mr. Box testified that Box Dep. Ex. 15 is a December 1997 issue of Fine Woodworking Magazine. (**Ex. 46**, 3/17/09 Box. Dep. Tr. 61:8-21; **Ex. 47**, Box Dep. Ex. 15). Mr. Box testified that DEF002478 of Box Dep. Ex. 15 is a Delta advertisement promoting a white colored Delta tablesaw as "White Hot." (**Ex. 46**, 3/17/09 Box Dep. Tr. 62:10-12; **Ex. 47**, Box Dep. Ex. 15).

36. Box Dep. Ex. 14 contains excerpts from American Woodworker Magazine's 1999 Tool Buyer's Guide. (**Ex. 48**, Box. Dep. Ex. 14). Mr. Box testified that DEF005284 of Box. Dep. Ex. 14 is a Delta advertisement promoting a white colored Delta tablesaw as "White Hot." (**Ex. 46**, 3/17/09 Box Dep. Tr. 58:14 – 18; **Ex. 48**, Box Dep. Ex. 14).

37. Mr. Box testified that the tablesaw shown on DEF005284 of Box Ex. 14 has a white rectangular base. (**Ex. 46**, 3/17/09Box. Dep. Tr. 59:12-14).

38. Mr. Box testified that he was employed at Delta when Delta began selling its white tablesaw in 1998 and that he was responsible for coming out with the White Hot tablesaw. (**Ex. 46**, 3/17/09 Box. Dep. Tr. 58:19-21; 59:23 – 60:8). Mr. Box testified that during at least some part of the time between 1998 and 2003, both Jet and Delta were selling competing tablesaws with a white rectangular base. (**Ex. 46**, 3/17/09 Box Dep. Tr. 61:2-5).

### OTHERS

39. Andrew Israel is the Vice President of Sales at Utter Guys, a distributor of woodworking and metalworking machinery. (**Ex. 49**, Israel Decl. ¶¶1-2). Mr. Israel has been with Utter Guys for over twenty years and has worked in the woodworking industry and

metalworking industry for over twenty years. (**Ex. 49**, Israel Decl. ¶1). Mr. Israel stated in his declaration that he recalls the use of the color white being used by Delta in connection with table saws and bandsaws and that Delta advertised these machines as part of its "Great White" promotion. (**Ex. 49**, Israel Decl. ¶3).

40. Tom Dou is the President of Acra Machinery ("Acra") and has been involved in the metalworking industry for approximately 35 years. (**Ex. 50**, Dou Decl. ¶1). Mr. Dou stated in his declaration that Acra manufactures and sells metalworking lathes and milling machines in the U.S. (**Ex. 50**, Dou Decl. ¶2). Mr. Dou stated in his declaration that manufacturers of metalworking machines such as Chevalier, Kent Machinery and Acer have all used the color white for equipment in the U.S. prior to 1995. (**Ex. 50**, Dou Decl. ¶4). Mr. Dou stated in his declaration that he believes that the color white is used commonly on metalworking machinery and is not unique to any one supplier. (**Ex. 50**, Dou Decl. ¶5).

41. Mr. Jeff LeNeave is the co-owner of LeNeave Machinery and Supply ("LeNeave") and has worked in the woodworking industry and metalworking industry for approximately 20 years. (**Ex. 51**, LeNeave Decl. ¶1). LeNeave distributes woodworking and metalworking machines. (**Ex. 51**, LeNeave Decl. ¶2). Mr. LeNeave stated in his declaration that he has sold and distributed woodworking and metalworking machines for Jet, Delta, Mini Max, SCMI, Marcon, Invicta, Shop Fox, Ritter, US Concepts, North State and Castle. (**Ex. 51**, LeNeave Decl. ¶2). Mr. LeNeave stated in his declaration that some of the woodworking and metalworking machines that LeNeave carries and has sold are predominately or partially white in color, and that he has sold and distributed white woodworking and metalworking products since prior to 1995. (**Ex. 51**, LeNeave Decl. ¶2). Mr. LeNeave, stated in his declaration that he does not believe the use of the color white on woodworking and metalworking machines identifies a particular brand or manufacturer. (**Ex. 51**, LeNeave Decl. ¶3).

### E. WMH'S KNOWLEDGE OF PRIOR USE OF WHITE

42. Plaintiff's vice president of sales, George Blanchfield, testified that he is aware of other companies in the metalworking field that have an off-white color on their machines like JET, that some of these machines are the same type as WMH's JET machines, and that these other white machines have been in the market since prior to 1995. (**Ex. 3**, Hg Tr. 118:9 – 119:2).

43. Scott Box, plaintiff's former vice president of sales and marketing, testified that Delta and JET were competitors and that JET introduced white woodworking machines after Delta introduced Delta's Great White saws (**Ex. 47**) in 1996, and that the Delta saws are

still used today. (**Ex. 45**, 11/6/07 Box Dep. Tr. 18, 21-22, 29, 66). Mr. Box testified that there are instances of other white products that have been showing up over the years from the mid-'80s up until today (**Ex. 45**, 11/6/07 Box Dep. Tr. 85-86, 100).

44.  During discovery, WMH produced documents including: a 1994 Chevalier report (**Group Ex. 52**, WMH 204255, 204298-99, 204302) that includes photos of Chevalier machinery from 1978-1992; an American Woodworker 1997 Tool Buyer's Guide (**Group Ex. 52**, WMH 203095, WMH203168) that includes an advertisement for a Makita machine; a January/February 1998 Woodworker's Journal (**Group Ex. 52**, WMH 82693, WMH82775-77) that includes OneWay machinery; an American Woodworker 1998 Tool Buyer's Guide (**Group Ex. 52**, WMH 202925, WMH203047, WMH203094) that includes advertisements for Makita and Delta machinery; a 1998 Woodworker's Journal (**Group Ex. 52**, WMH 82297) that includes an advertisement for Delta machinery; a Holiday 1998 Tool Crib of the North Catalog (**Group Ex. 52**, WMH 67034, WMH 67036) that includes an advertisement for Delta machinery; a February 1999 Fine Woodworking magazine (**Group Ex. 52**, WMH 58137, WMH58169) that includes an advertisement for Delta machinery; a February 2001 Fine Woodworking magazine (**Group Ex. 52**, WMH 53481, WMH 53581, WMH 53615) that includes advertisements for Mini Max and Delta Machinery; materials from the 12th Annual Woodworking & Power Tool Show (**Group Ex. 52**, WMH 50242, WMH 50273) that includes advertisements for SCM machinery; a June 2002 Fine Woodworking magazine (**Group Ex. 52**, WMH 55156, WMH 55157, WMH 55170, WMH 55268) that includes advertisements for Delta and Mini Max machinery; an August 2002 Woodworker's Journal (**Group Ex. 52**, WMH 81599, WMH 81633) that includes an advertisement for Mini Max machinery; an August 2002 Fine Woodworking magazine (**Group Ex. 52**, WMH 55294, WMH 55295, WMH 55310, WMH 55384) that includes advertisements for Delta and Mini Max machinery; a Highland Hardware Tools for Woodworking's Early Fall 2002 Catalog (**Group Ex. 52**, WMH 49899, WMH 49946) that includes advertisements for OneWay machinery; a September 30, 2002 DoAll's Best Values catalog (**Group Ex. 52**, WMH 53126, WMH 53131) that includes an advertisement for Chevalier machinery; an October 2002 Fine Woodworking magazine (**Group Ex. 52**, WMH 55420, WMH 55421, WMH 55502) that includes advertisements for Delta and Mini Max machinery; a December 2002 Modern Woodworking magazine (**Group Ex. 52**, WMH 208418, WMH 208427, WMH 208457) that includes advertisements for Mini Max and SCMI machinery, and a December 2002 Fine Woodworking magazine (**Group Ex. 52**, WMH 55554, WMH 55596, WMH 55660) that includes advertisements for Mini Max machinery.

F.  CHANNELS OF TRADE/COMPETITORS

45.  The identification of goods in WMH's '180 Reg is for "consumer and industrial woodworking and metalworking equipment. (**Ex. 53**, file history for '180 Reg).

46.  Mr. Box testified that the white Jet and white Delta tablesaws on the market between some part of 1998 and 2003 compete with one another and that WMH introduced Jet white woodworking machines after Delta introduced Delta's Great White saws (**Ex. 46**, 3/17/09 Box Dep. Tr. 61:2-7).

47.  During the preliminary injunction hearing, Mr. Blanchfield testified that Chevalier manufactures some metalworking machines, such as milling machines and surface grinders, that compete with some of WMH's models. (**Ex. 3**, Hg Tr. 106:12 – 107:6). Mr. Blanchfield testified that Delta, the manufacturer of Delta's "Great White" table saw, is a competitor of WMH. (**Ex. 3**, Hg Tr. 104). Mr. Blanchfield testified that SCM products compete with JET products. (**Ex. 3**, Hg Tr. 107). Mr. Blanchfield testified that someone interested in a JET lathe could consider a OneWay lathe. (**Ex. 3**, Hg Tr. 109). Mr. Blanchfield testified that JET metalworking machines are sold for industrial uses. (**Ex. 3**, Hg Tr. 116). Mr. Blanchfield testified that Acer and JET surface grinders with the same specifications would be competitive. (**Ex. 54**, Blanchfield Dep. Tr. 96-99). Mr. Blanchfield testified that he is familiar with Timesavers and remembers seeing Timesavers' machines in the time period of 1997-2002. (**Ex. 54**, Blanchfield Dep. Tr. 106-108). Mr. Blanchfield testified that he is familiar with SCM machines, and remembers seeing SCM machines in the time period 1997-2002. (**Ex. 54**, Blanchfield Dep. Tr. 109). Mr. Blanchfield testified that he is familiar with Mini Max, and that some Mini Max lathes compete with some JET lathes. (**Ex. 54**, Blanchfield Dep. Tr. 111-112). Mr. Blanchfield testified that he is familiar with the OneWay lathe, and that OneWay competes with JET. (**Ex. 54**, Blanchfield Dep. Tr. 114). Mr. Blanchfield testified that without a side-by-side comparison, he could not tell whether or not the OneWay and JET lathes are the same color. (**Ex. 54**, Blanchfield Dep. Tr. 114-115).

48.  Mr. Box testified that the year after Delta displayed Delta's "Great White" table saw in Atlanta at the 1996 IWF Show, WMH's woodworking machines switched to white. (**Ex. 45**, 11/06/07 Box Dep. Tr. 11). Mr. Box testified that between the mid 1980's to 2007 he recalls seeing woodworking and metalworking machinery, other than JET, with white bases. (**Ex. 45**, 11/06/07 Box Dep. Tr. 60). Mr. Box testified that he is aware of several companies that are selling white woodworking products for many years, and that there are a lot of people that do have white. (**Ex. 45**, 11/06/07 Box Dep. Tr. 85-86). Mr. Box testified the "As we pointed out, there are a lot of instances of other white products that have been

12

showing up over the years . . . from the mid-80's up until today." (**Ex. 45**, 11/06/07 Box Dep. Tr. 100). Mr. Box testified that he was familiar with Acer in 2003. (**Ex. 45**, 11/06/07 Box Dep. Tr. 21). Mr. Box testified that some of JET's milling machines compete with Acer's milling machines. (**Ex. 46**, 3/17/09 Box Dep. Tr. 50). Mr. Box testified that he was familiar with OneWay in 2003, and that OneWay was selling woodworking lathes in 2003 that were white looking. (**Ex. 46**, 3/17/09 Box Dep. Tr. 50-51). Mr. Box testified that JET lathes would compete with OneWay lathes to some degree. (**Ex. 46**, 3/17/09 Box Dep. Tr. 51). Mr. Box testified that he knew, in 2003, that some SCM machinery was white. (**Ex. 46**, 3/17/09 Box Dep. Tr. 53). Mr. Box testified that he was familiar with Pistorius in 2003, and that he knew that Pistorius sold white looking machinery. (**Ex. 46**, 3/17/09 Box Dep. Tr. 55-56).

49. Mr. Lo, the President of Supra testified that some of ACER's machines are competitive with some of plaintiff's metalworking machines, e.g., both have surface grinders with the same specifications. (**Ex. 16**, Lo Dep Tr. 15:22-16:5; 23:1-11). Mr. Lo testified that some of Acer's machines are used by small machine shops and for low production. (**Ex. 16**, Lo Dep Tr. 14:16-18). Mr. Lo testified that he has seen Jet metalworking machines at some of the same trade shows as Acer. (**Ex. 16**, Lo Dep Tr. 12:13-16).

50. Ms. Stansell, a parts specialist for SCM USA, testified that the bandsaws shown on the first page of SCM Dep. Ex. 30 are appropriate for small woodworking shops. (**Ex. 21**, Stansell Dep Tr. 18:1-17; **Ex. 28**, SCM Dep. Ex. 30). Mr. Gangone, the President of SCM USA, stated in his declaration that some of the white-looking machines sold and serviced by SCM USA are appropriate for use by woodworking shops, hobbyists and/or low volume jobs. (**Ex. 31**, Gangone Decl. ¶ 2). Mr. Mueller, the Marketing Manager for Timesavers, testified that Timesavers' products are used in small woodworking shops having less than ten employees. (**Ex. 32**, Mueller Dep. Tr. 31:12-15).

51. George Blanchfield, plaintiff's vice president of sales, admitted that someone interested in WMH's woodworking lathe may also be interested in the OneWay lathe (**Ex. 3**, Hg Tr. 109:3-5).

52. Mr. Peter Eelman, the Vice-President of Exhibitions for the International Manufacturing Technology Show ("IMTS"), stated in his declaration that both ACER and plaintiff were exhibitors at the IMTS in 1994, 1996, 1998, 2000, 2002 and 2004 (**Ex. 55**, Eelman Decl ¶2).

53. George Blanchfield, testified that JET's metalworking machines are more in the industrial market (**Ex. 54**, Blanchfield Dep. Tr. 103) and that plaintiff's JET market goes beyond hobbyists (**Ex. 54**, Blanchfield Dep. Tr. 116).

54. At the dealer retail level, the prices of some of plaintiff's JET machines are close to $30,000 (**Ex. 3**, Hg Tr. 68).

55. Mr. Damon testified that as a dealer, he has sold MiniMax, SHOP FOX and JET (**Ex. 3**, Hg Tr. 160), and that when a customer comes into the store they see SCMI white machines as well as the others at issue here (**Ex. 3**, Hg Tr. 162-163). Mr. Damon went on to state that from 30 feet, regardless of the manufacturer, all of these machines look nearly identical (**Ex. 3**, Hg Tr. 155).

### G. WMH'S REPRESENTATIONS DURING THE PROSECUTION OF THE '180 REG

56. On March 6, 2003 plaintiff filed with the U.S. Patent and Trademark Office ("PTO") the underlying trademark application for the '180 Reg. (**Ex. 53**, file history for '180 Reg). Plaintiff's trademark application sought federal registration for "the color white applied to the exterior surface" of "consumer and industrial woodworking and metalworking equipment." (**Ex. 53**, file history for '180 Reg).

**Routers and Chop Saws**

57. Plaintiff's application for the '180 Reg alleged use of the alleged mark for the following:

> power saws, bandsaws, chop saws, tablesaws, cabinet saws, arbors, planers, jointers, molders, jigs, shapers, mortisers, welders, grinders, routers, drills, drill presses, tapping presses, milling machines, feeders, lathes, shears, rotary machines, sanders, polishers, buffers, platform trucks, pallet trucks, dust collectors, air filtration systems, and coolant systems, and parts, fittings and accessories for all of the aforesaid goods, namely tool tables, cabinets, stands, bases and covers

(**Ex. 53**, file history for '180 Reg).

58. Plaintiff's Vice President and General Counsel, Robert S. Romano, signed the application on behalf of plaintiff, and WMH's counsel, Edward Clair, filed the application and is identified as the attorney of record. (**Ex. 53**, file history for '180 Reg; **Ex. 56**, 7/17/09 Clair Dep. Tr. 11:16-18; **Ex. 57**, 2/10/09 Romano Dep Tr. 32:6-8).

59. Mr. Clair testified that someone at WMH told him what goods to list in the application. (**Ex. 56**, Clair Dep. Tr. 28:2-6).

60. WMH's vice president of sales, George Blanchfield, testified at the preliminary injunction hearing that WMH's JET division does not sell routers. (**Ex. 3**, Hg Tr. 117-118). Mr. Blanchfield testified that WMH does not sell chop saws, and that chop saws are not listed in any JET price lists or catalogs. (**Ex. 3**, Hg Tr. 117-118).

14

61. WMH's former vice president of sales and marketing, Scott Box, testified that in 2004 WMH did not sell routers. (**Ex. 45**, 11/06/07 Box Dep. Tr. 42). Mr. Box testified that in 2004 WMH did not sell chop saws. (**Ex. 45**, 11/06/07 Box Dep. Tr. 52).

62. WMH's JET catalogs for 2002 to 2004 do not list routers in the product index. (**Ex. 4**, Excerpts from various JET catalogs). WMH's JET catalogs for 2002 to 2004 do not list chop saws in the product index. (**Ex. 4**, Excerpts from various JET catalogs).

63. On August 28, 2003 the PTO mailed an Office Action in connection with the plaintiff's application to Mr. Clair. (**Ex. 53**, file history for '180 Reg). One of the grounds identified by the examiner for refusing to register the alleged mark was that "the proposed mark is merely an ornamental feature of the goods." (**Ex. 53**, file history for '180 Reg). The examiner instructed the plaintiff that its response "<u>must</u> also address the use of color in the relevant industry." (**Ex. 53**, file history for '180 Reg). On this point, the Office Action specifically commanded that

> The applicant's response must also address the use of color in the relevant industry. The applicant must advise the examining attorney of any other use of color by the applicant, such as if the applicant sells the same goods in other colors. The applicant must also indicate whether competitors produce the same or similar goods in the identified color and in colors other than the identified color. The applicant must provide color photographs and color advertisements showing competitive goods.

(**Ex. 53**, file history for '180 Reg).

### Competitors' Use of White

64. Mr. Clair testified that he is sure that he asked WMH for information and/or documents regarding the use of color in the relevant industry. (**Ex. 56**, Clair Dep. Tr. 92:18-24). Mr. Clair testified that WMH provided him with documents regarding the use of color in the relevant industry and that he attached these documents to the Office Action [Response]. (**Ex. 56**, Clair Dep. Tr. 93:11-17). Mr. Clair testified that he believes that he did not receive any additional documents from WMH that were not attached to the Office Action Response. (**Ex. 56**, Clair Dep. Tr. 93:23 – 94:1). Mr. Clair testified that WMH did not supply him with any information about competitors' use of white on similar goods prior to 2004. (**Ex. 56**, Clair Dep. Tr. 96:17-23). Mr. Clair testified that he was sure that he specifically asked the client whether or not they had any competitors selling woodworking or metalworking machinery that were a white color. (**Ex. 56**, Clair Dep. Tr. 101:5-10). Mr. Clair testified that WMH responded to his inquiry concerning white-looking machinery made by competitors by informing him that "none of our competitors use white." (**Ex. 56**, Clair Dep. Tr. 101:13-15).

Mr. Clair testified that he drafted the declaration that Box signed. (**Ex. 56**, Clair Dep. Tr. 22:15-18).

65. Plaintiff responded to the August 28, 2003 Office Action by filing a Response on March 1, 2004. (**Ex. 53**, file history for '180 Reg). Mr. Clair prepared, signed and filed the March 1, 2004 Response. (**Ex. 56**, Clair Dep. Tr. 12:9-11). WMH's March 1, 2004 Response, verified under penalty of perjury that:

> For decades prior to the Applicant's adoption for the color WHITE for its woodworking and metalworking machines, manufacturers of such equipment typically provided the goods in a limited range of shades of either gray, green or blue. The Applicant previously used such industry standard colors for its goods. Over approximately the last ten years, other manufacturers of woodworking and metalworking equipment have adopted differentiating distinct colors for their respective equipment.

(**Ex. 53**, file history for '180 Reg at DEF026913).

66. Mr. Clair testified that there were no documents filed with the Office Action Response that show competitors' use of the color white on the same or similar goods. (**Ex. 56**, Clair Dep. Tr. 95:16-23). Mr. Clair testified that WMH's March 1, 2004 Response to the Office Action did not address the examiner's requirement to identify whether competitors produced the same or similar goods in the identified color. (**Ex. 56**, Clair Dep. Tr. 97:12-20). Mr. Clair testified that Exhibit A to the March 1, 2004 Response to the Office Action contained excerpts from the October 2003 issue of *Popular Woodworking Magazine*. (**Ex. 56**, Clair Dep. Tr. 132:14-22). Mr. Clair testified that he used pages supplied by WMH to make up Exhibit A to the March 1, 2004 Response to the Office Action. (**Ex. 56**, Clair Dep. Tr. 133:8-11). Mr. Clair testified that he does not believe that he looked at the entire issue of the October 2003 issue of *Popular Woodworking Magazine* prior to filing the March 1, 2004 Response to the Office Action. (**Ex. 56**, Clair Dep. Tr. 133:21 – 134:1).

67. Mr. Box testified that he "could almost assure you I looked at the entire issue [of the October 2003 issue of *Popular Woodworking Magazine*], which is a habit of mine that I've been doing for many years on a lot of these publications." (**Ex. 45**, 11/6/07 Box Dep. Tr. 97:24 – 98:5).

68. Mr. Box signed a Declaration which accompanied WMH's March 1, 2004 Response. (**Ex. 53**, file history for '180 Reg). Mr. Box's Declaration specifically claimed that the color white had become distinctive of plaintiff's goods "by reason of substantially exclusive and continuous use . . . for more than five years preceding the date" of the declaration. (**Ex. 53**, file history for '180 Reg).

69. During discovery, WMH produced: a Winter 2002/2003 Fine Woodworking magazine (**Group Ex. 52**, WMH 55698, WMH 55711) that includes an advertisement for Mini Max machinery. WMH produced a February 2003 Fine Woodworking magazine (**Group Ex. 52**, WMH 55844, WMH 55872, WMH 55900-01) that includes an advertisement and article about Mini Max machinery; a February 2003 Woodworker's Journal (**Group Ex. 52**, WMH 81290, WMH 81306) that includes an advertisement for Mini Max machinery; an April 2003 Woodworker's Journal (**Group Ex. 52**, WMH 81186, WMH 81247) that includes an advertisement for Mini Max machinery; a June 2003 Fine Woodworking magazine (**Group Ex. 52**, WMH 56106, WMH 81010) that includes an advertisement for Mini Max machinery; a Winter 2003 Catalog (**Group Ex. 52**, WMH 50001, WMH 50065) that includes an advertisement for OneWay machinery; a December 2003 Journal (**Group Ex. 52**, WMH 79943, WMH 79958) that includes an advertisement for Mini Max machinery, and an October 2004 Woodworker's Journal (**Group Ex. 52**, WMH 79427, WMH 79510) that includes a review of Mini Max machinery.

**WMH's Representations Concerning Enforcement of its Alleged Mark**

70. WMH's March 1, 2004 Response to the Office Action stated

> The applicant has successfully enforced its rights in the mark against other entities' use of the white on woodworking and metalworking machines.

(**Ex. 53**, file history for '180 Reg; **Ex. 56**, Clair Dep Tr. 13:2-14). Mr. Clair testified that he could not recall more than one party that WMH would have entered into an agreement with regarding the alleged mark, which is the only agreement WMH produced as of the date WMH filed its response. (**Ex. 56**, Clair Dep. Tr. 48:3-20).

71. On June 30, 2005, the PTO issued a Notice of Publication in connection with the application for the '180 Reg. (**Ex. 53**, file history for '180 Reg).

72. On October 12, 2004, WMH's alleged mark was registered on the Principle Register of the U.S. PTO as the '180 Reg. (**Ex. 53**, file history for '180 Reg).

Dated: August 4, 2009        Respectfully Submitted,

/s/ Joseph F. Schmidt
Joseph F. Schmidt (Illinois Bar No. 2492180)
Michele S. Katz (Illinois Bar No. 6273985)
George S. Pavlik (Illinois Bar No. 6282048)
**HUSCH BLACKWELL SANDERS WELSH & KATZ**
120 S. Riverside Plaza, 22nd Floor
Chicago, IL 60606
Tel: (312) 655-1500

Fax: (312) 655-1501
E-mail: joseph.schmidt@huschblackwell.com
E-mail: michele.katz@huschblackwell.com
E-mail: george.pavlik@huschblackwell.com
Attorneys for Defendants Woodstock International, Inc.
and Grizzly Industrial, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Defendants'/Counter-Plaintiffs' Rule 56.1(a)(3) Statement of Material Facts in Support of their Motion for Summary Judgment, was served on August 4, 2009, on the following parties in accordance with the Court's Administrative Procedures for Electronic Case Filing:

Steven Schroer
Edward E. Clair
Christine Pompa
Shane Delsman
FITCH, EVEN, TABIN & FLANNERY
120 South LaSalle Street
Suite 1600
Chicago, Illinois 60603-3406

                                                /s/ Joseph F. Schmidt
                                                One of the Attorneys for
                                                Defendants/Counter-Plaintiffs